609 A.2d 843

**COMMONWEALTH of Pennsylvania**

v.

**Raymond SMULSKY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1992.

Filed June 26, 1992.

462

Norris E. Gelman, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, WIEAND and MONTGOMERY, JJ.

WIEAND, Judge:

Raymond Smulsky, having been found guilty of rape, involuntary deviate sexual intercourse and corruption of a five year old, female child, argues on direct appeal that the Commonwealth peremptorily challenged jurors in violation of the holding of the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After careful review, we conclude that appellant's several arguments are lacking in merit.

Appellant was arrested for repeatedly abusing sexually his girlfriend's five year old daughter. On October 27, 1989, he was tried by jury and was convicted of rape, involuntary deviate sexual intercourse and corruption of a

minor. Post-verdict motions were denied, and, on April 17, 1991, appellant was sentenced to prison for not less than 22½ years nor more than 45 years. Following denial of a motion to modify the sentence, appellant filed the instant appeal.

Appellant, who is white, contends that during jury selection the prosecutor, over objection, utilized peremptory challenges to exclude blacks from the jury in violation of *Batson v. Kentucky, supra.*[1] *Batson* requires that a criminal defendant's jury be selected without purposeful racial discrimination. Once a defendant presents a prima facie case that such purposeful discrimination has occurred, the burden shifts to the prosecution to supply a legitimate, race-neutral reason for striking a potential juror. See *Batson v. Kentucky, supra* at 93–94, 106 S.Ct. at 1721, 90 L.Ed.2d at 85–86. See also *Commonwealth v. Jones*, 525 Pa. 323, 325–326, 580 A.2d 308, 309–310 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1009, 112 L.Ed.2d 1092 (1991); *Commonwealth v. Weaver*, 390 Pa.Super. 434, 437–438, 568 A.2d 1252, 1253 (1989), *allocatur denied*, 527 Pa. 610, 590 A.2d 297 (1991); *Commonwealth v. Dinwiddie*, 373 Pa.Super. 596, 600–601, 542 A.2d 102, 104 (1988), *aff'd*, 529 Pa. 66, 601 A.2d 1216 (1992). The Commonwealth does not meet its burden by stating baldly that its actions involved no racial motive or were done in good faith. *Batson v. Kentucky, supra* at 98, 106 S.Ct. at 1723–1724, 90 L.Ed.2d at 88. See also *Commonwealth v. Dinwiddie, supra*, 373 Pa.Superior Ct. at 601, 542 A.2d at 104–105.

Although several blacks served on appellant's jury, it is clear that the prosecutor exhausted all seven of her peremptory challenges to exclude black venirepersons. Based thereon, the trial court found that defendant had demonstrated a prima facie case of racial discrimination under *Batson*. The Commonwealth then provided its reasons for

---

1. Although appellant is white, he has standing to challenge the exclusion of blacks from his jury. See *Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411, 429 (1991).

excluding the black venirepersons, and the trial court found those reasons to be race-neutral.

■ Appellant's presentation of a prima facie case is unchallenged in this appeal. Therefore, we must carefully examine the Commonwealth's explanations for excluding black persons to determine if there is support for the trial court's conclusion that those explanations were, in fact, valid and nondiscriminatory. The primary responsibility for assessing the validity of the Commonwealth's explanations is vested in the trial court, see *Commonwealth v. Lloyd,* 376 Pa.Super. 188, 197–198, 545 A.2d 890, 894–895 (1988), for

> "a finding of intentional discrimination is a finding of fact" entitled to appropriate deference by a reviewing court. Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.

*Batson v. Kentucky, supra* at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21 (citations omitted). See also *Commonwealth v. Woodall,* 397 Pa.Super. 96, 99, 579 A.2d 948, 950 (1990).

■ A close examination of the voir dire examination discloses that the Commonwealth peremptorily dismissed three potential black jurors because they were employed as security guards, or because they were related to others who were employed as security guards. After striking one potential black juror for this reason, the prosecutor, Ms. Perlis, explained as follows:

> Your Honor, I struck him because he had been a security guard, I mean, in his past. It is my feeling, based on experience that I have had with juries, that security guards are often individuals who were turned down at one time for being not qualified to be police officers and often have some checkered pasts. Also, security guards tend to have seen a great deal of crime and have kind of, I think, a jaundiced view and that is why I struck Mr. Simmons.

. . . .

I would also like to add on to the record, I had a specific experience in Commonwealth vs. Hester, H–E–S–T–E–R, before Judge Halbert, where I allowed a security guard to remain on the jury, and I felt after talking to him after the jury was complete and Judge Halbert was there talking to the jurors that the very nature of his job and his background coincides to make a very unfair juror and I felt that strongly.

█ We will not disturb the trial court's finding that the Commonwealth gave a race-neutral explanation for striking those potential jurors who were, or who had relatives who were, security guards. A prosecutor's peremptory strike explanation need not rise to the level justifying a challenge for cause. *Batson v. Kentucky, supra* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Here, the trial court judge, who heard the questioning of the potential jurors, the voir dire objections and the explanations of counsel, could properly find that the Commonwealth sincerely believed that those associated with the security guard profession would be biased jurors, resentful and critical of the criminal justice system.

█ As to another peremptory strike, the Commonwealth stated:

I struck Mr. Pinckney particularly because I felt his hand mannerism was extremely odd. When Your Honor was speaking to him as well as counsel and myself, he didn't use eye contact and he was using his hands to cover his mouth and head. I felt that was very—I don't now [sic] how to describe it, but he was not being forthright because of his body language and I felt very uncomfortable while I was watching him answer questions. And that was my essential feeling about him. I felt, also, that he had retired a very long time ago and that he was out of the world in a sense and was not part of what was going on around him. He was rather retired at a very young age, and I thought had not been part of the world

for a while. So, I felt very uncomfortable with those two items.

Certainly, the Commonwealth's belief that a potential juror has been disingenuous and has been detached from the outside world for a prolonged period of time is a legitimate, race-neutral reason for excluding the juror peremptorily. We conclude, therefore, that the trial court did not abuse its discretion when it denied appellant's objection to this challenge.

■ Another potential juror was struck peremptorily by the Commonwealth because of his lack of experience with young children. The Commonwealth explained:

I specifically asked Mr. Curry, number one, if he had any brothers or sisters, and he said no. He has no children. He lives with his mother. I felt he had absolutely no children contact and as a result I didn't feel it was appropriate for him to sit on the jury. Plus, he is very young. Older people, even if they don't have kids, often have had more contact with children and I felt he wouldn't be able to really listen to a child with an intelligent view toward the child. I also felt his work history had been somewhat limited. However, I think the main thing was I felt he didn't have any contact with children.

Counsel then entered into the following exchange:

MR. MATTHEWS [defense counsel]: Judge, juror number nine, who is now being moved in as juror number three, her number is juror number two six seven, has no children. She lives alone in Center City, has lived there for the last seven years, has limited contact with children, and the main difference is that she is a white woman, and juror number eighty-six is a black male. Judge, the thing that Batsun [sic] requires by the Commonwealth is that if they are called to put forth reasons why, and they have not asked during voir dire, that is the purpose of voir dire.

. . . .

[The prosecutor] did not even ask juror number eighty-six whether or not he had a relationship or contact with children. She asked him if he had any brothers or sisters. She asked him whether or not—who he lived with, and he said his mother. That is no basis to say that he has no contact with children.

MS. PERLIS [prosecutor]: He said he had no contact with children.

As to two sixty-seven, as I recall, I remember going through a great deal of questioning in my mind which was then questioned by this other counsel as to whether she babysat for nieces and nephews and she said yes and she said that one at a time was enough. So, I felt she had enough children contact, plus she was a nurse. Those two things together made her a good juror.

MR. MATTHEWS: She said she came into no contact with children in nursing. I specifically asked her if she had contact with children because I wanted to know that. That opportunity was offered or made available to the Commonwealth for juror number one eighty-six and she did not follow up on that.

■ In a case involving child sexual abuse, knowledge and familiarity with children may be a relevant quality, important to the matter at hand. The record supports the Commonwealth's contention that this potential juror had little contact with children and, because of his age, had less time to develop an understanding of them. The trial court did not abuse its discretion when it allowed the Commonwealth to remove the juror.

■ Lastly, the Commonwealth struck two jurors because of their past involvement with the criminal justice system. Appellant concedes that the first of these challenges was proper. It involved a black woman whose only son had been convicted of crime and was serving a sentence of incarceration. She had, in fact, expressed unhappiness about her son's case. The challenge, therefore, was proper.

The second of these challenges was also proper. In this instance, the Commonwealth made use of a peremptory strike to exclude a black venireman because his close friend had been accused of rape. The venireman expressed the belief that the accuser had lied in his friend's case and that he considered child accusers to be unbelievable as well. The reason given for refusing to allow this juror to sit in a child sex abuse case was both legitimate and race-neutral.

It is apparent, therefore, that the record demonstrates race-neutral, legitimate reasons for the Commonwealth to challenge these black persons by peremptory challenges. The trial court properly exercised its discretion when it denied appellant's objections thereto.

The judgment of sentence is affirmed.