620 A.2d 497

**COMMONWEALTH of Pennsylvania**

v.

**Benjamin CORREA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 2, 1992.

Filed Jan. 22, 1993.

58

John A. Ryan, Philadelphia, for appellant.

Robin Godfrey, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, following appellant's conviction on charges of possession of cocaine and possession of cocaine with intent to deliver. Appellant was sentenced to four to ten years of imprisonment and a $5,000.00 fine. We affirm.

Herein, appellant raises the following numerous allegations of error:

I. Did the Commonwealth deny [appellant] a fair trial based on Article I § 6, § 26 and § 28 of the Pennsylvania Constitution and Amendment VI and XIV of the United States Constitution?

A. Did the Commonwealth deny venire persons belonging to cognizable groups equal protection rights guaranteed to them by the U.S. and Pennsylvania Constitutions and as a direct result of that deprivation deny [appellant] his right to a jury chosen in a nondiscriminatory manner?

B. Are females a cognizable group included in the equal protection clause of the U.S. and Pennsylvania Constitutions?

C. Are Filipinos a cognizable group included in the equal protection clause of the U.S. and Pennsylvania Constitutions?

II. Did the absence of a low-grade charge as to testimony by an expert witness who had not participated in the examination of the actual article being discussed deprive the [appellant] of a crucial decision being made by the jury, and thereby deny defendant a fair trial when no other evidence was offered as to any indicia of a delivery or intended delivery?

III. Did prior attorneys provide ineffective assistance to [appellant] by not raising objections and/or not preserving issues?

IV. Did the trial court err when it permitted improper impeachment of the defense witness where the impeaching offense was not *crimen falsi?*

V. Was the evidence insufficient to sustain the verdict of guilty of possession with the intent to deliver where the "expert" witness based his opinion solely on the prosecutor's description of the packaging of the controlled substance?

VI. Was [appellant's] U.S. and Pennsylvania right to a fair trial violated and prejudiced when there was open hostility between counsel and the trial judge in front of the jury that pervaded the trial and adversely affected the [appellant]; and the trial court's demeanor and attitude to the defense showed disbelief and contempt?

 First, appellant, citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), argues that the Commonwealth violated the equal protection clause of the United States and Pennsylvania Constitutions when it exercised its peremptory challenge in a discriminatory manner. Specifically, appellant notes that the Commonwealth used six of its seven peremptory challenges to exclude members of a racial or ethnic minorities. The Commonwealth chose to exercise its challenges to bar six Blacks and one Filipino from serving on the jury. In addition, all of those persons excluded were women. Appellant argues that such action by the Commonwealth establishes a *prima facie* case of purposeful discrimination which the Commonwealth failed to rebut. However, for the following reasons, we disagree.

The record reveals the following information concerning the selection of the jury: Appellant is a Hispanic male. The venire panel consisted seventeen women and eight men. By race, there were twelve Blacks, twelve Whites and one Filipino in the venire. The petit jury finally selected was comprised of seven women and five men, and the jury was equally divided as to race with six Black jurors and six White jurors. Both alternate jurors were women; one was Black and the other White.

The first jury panel consisted of twelve prospective jurors of which five were Black, one was Filipino and seven were White. The Commonwealth exercised the first four of its seven peremptory challenges to exclude three Black women and one Filipino woman from the jury.[1] Following the fourth challenge, defense counsel requested a side bar, during which he objected to the Commonwealth's peremptory challenges on the grounds that they were racially motivated in contravention of *Batson, supra.*

As a precaution, the Court asked the Commonwealth to set forth the reasons for its challenges.[2] As to excluded Black juror, Laverne Jones, the district attorney stated that she generally does not want jurors who are involved in "social work" as a profession, and, therefore, she challenged Ms. Jones who was an administrator at a shelter for emotionally disturbed, homeless persons. N.T., 6/22/90, p. 67. As to excluded Filipino juror Patti Gabasa, the Commonwealth excluded her because she was difficult to understand when she spoke and the district attorney was concerned that Ms. Gabasa might have difficulty in understanding the testimony. N.T., 6/22/92, p. 69. As to excluded Black juror Gina Weatherly, the district attorney explained she struck Mrs. Weatherly because her husband was unemployed, and she preferred jurors whose personal lives were "stable". N.T., 6/22/92, p. 70. In addition to justifying her use of the peremptory challenges, the district

1. Pa.R.Crim.P. 1126 provides that in non-capital felony cases involving only one defendant, both the Commonwealth and the defense are entitled to seven peremptory challenges.

2. We note that the Assistant District Attorney handling the prosecution of appellant was a woman.

attorney specifically denied using her strikes in a racially biased manner, and the trial court cautioned the Commonwealth not to use her strikes in such a manner.[3]

Following the initial *Batson* side-bar, the Commonwealth used two more peremptory challenges to strike two Black females from the jury. Immediately prior to the trial, defense counsel reiterated his *Batson* objection and noted the district attorney's use of additional strikes against potential Black jurors. The Commonwealth once again asserted that its strikes were based upon race-neutral grounds. The trial began without any further discussion of the *Batson* issue.

In *Batson, supra,* the United States Supreme Court set forth the three factors relevant to establishing a *prima facie* case of purposeful discrimination: 1) The defendant is of a cognizable racial group; 2) The prosecutor has exercised peremptory challenges to remove venire members of defendant's race; and 3) The defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used his peremptory challenges to exclude veniremen from the petit jury on account of race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723; *Commonwealth v. Dinwiddie,* 529 Pa. 66, 70, 601 A.2d 1216, 1218 (1992); *Commonwealth v. Jackson,* 386 Pa.Super. 29, 39–40, 562 A.2d 338, 343 (1989) (*en banc* ), *alloc. denied,* 525 Pa. 631, 578 A.2d 926 (1990). As our Supreme Court noted in *Dinwiddie,* 601 A.2d at 1220 n. 11, the United States Supreme Court broadened a defendant's

---

**3.** At the time of the *Batson* side bar, the district attorney did not give a reason for her fourth peremptory challenge by which Kim Thompson was struck from the jury. However, a review of the record reveals this was merely an oversight. N.T., 6/22/90, pp. 66–74. Moreover, it is not necessary for the district attorney to justify every peremptory strike, since even if a *prima facie* case of discrimination is presented, the prosecutor may rebut the case without explaining every strike. *Commonwealth v. Stern,* 393 Pa.Super. 152, 156 n. 3, 573 A.2d 1132, 1135 n. 3 (1990), *alloc. denied,* 527 Pa. 610, 590 A.2d 297 (1991); *United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986).

Further, a logical reason for the Commonwealth's action is apparent on the face of the record. Ms. Thompson was unemployed, and consistent with the Commonwealth's reason for striking Gina Weatherly, i.e., her husband was unemployed, the Commonwealth challenged Ms. Thompson. N.T., 6/22/90, p. 57.

right to challenge apparent discrimination in the jury selection process through its decision in *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Therein, the Supreme Court stated:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular jury, but he or she does possess the right not to be excluded from one on account of race.

*Powers,* at ——, 111 S.Ct. at 1370.

In addition, the High Court held:

> We conclude that a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race. In so doing, we once again decline to "reverse a course of decisions of long standing directed against racial discrimination in the administration of justice." *Cassell v. Texas,* 339 U.S. 282, 290, 70 S.Ct. 629, 633, 94 L.Ed. 839 (1950) (Frankfurter, J., concurring in judgment). To bar petitioner's claim because his race differs from that of the excluded jurors would be to condone the arbitrary exclusion of citizens from the duty, honor, and privilege of jury service. In *Holland [v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) ] and *Batson,* we spoke of the significant role peremptory challenges play in our trial procedures, but we noted also that the utility of the peremptory challenge must be accommodated to the command of racial neutrality. *Holland, supra,* 493 U.S. at 479–80, 110 S.Ct. at 806–07; *Batson, supra,* 476 U.S., at 98–99, 106 S.Ct., at 1723–1724.

*Powers,* at ——, 111 S.Ct. at 1372.

As *Powers, supra,* clearly demonstrates, the race of the defendant need not be the same as the excluded jurors in

order for a claim of purposeful discrimination to exist.[4] Thus, the first two requirements of a *prima facie* case of discrimination set forth in *Batson, supra,* have essentially been eliminated. In order to establish a *prima facie* case of purposeful discrimination after *Powers, supra,* a defendant need only show the circumstances of his case raise an inference that the prosecutor used his peremptory challenges to exclude veniremen from the petit jury on account of race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723; *Dinwiddie,* 601 A.2d at 1221 (prosecutor must justify his peremptory challenges when they are exercised disproportionately to exclude from juries members of a particular racial class).

■ Instantly, the Commonwealth used five of six peremptory challenges to exclude Black venire persons from the petit jury. The inference which arises from this course of conduct, we believe, sufficiently satisfies the *prima facie* requirement to suggest that the Commonwealth used its peremptory challenges in a discriminatory manner, thus shifting the burden of proof to the Commonwealth and requiring it to provide an adequate and legitimate explanation for its actions. *Cf., Dinwiddie,* 601 A.2d at 1218. In meeting its burden, the Commonwealth must offer a clear and reasonably specific explanation of its actions which must consist of " 'legitimate reasons' of exercising the challenges." *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20; *Jackson,* 562 A.2d at 350. However, the prosecution's explanation need not rise to a level justifying exercise of a challenge for cause. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Jackson,* 562 A.2d at 350.

■ In reviewing this discrimination claim, we are mindful that an appellate court will reverse a trial court's finding of no discrimination only if that finding is clearly erroneous. *Jackson,* 562 A.2d at 350; *United States v. Tindle,* 860 F.2d 125, 129 (4th Cir.1988), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176,

---

4. In *Powers, supra,* a *White* defendant's right to object to the prosecution's exclusions of *Black* veniremen from the petit jury through the use of its peremptory challenges was confirmed in recognition of *"the broad right of a defendant in having a racially neutral jury selection process."* See, *Dinwiddie,* 601 A.2d at 1220.

104 L.Ed.2d 1038 (1989). Upon review of the record, we find that the Commonwealth has sustained its burden of proving that it did not exercise its peremptory challenges in a discriminatory fashion.

▮ The following facts have influenced our decision. The jury as finally selected was equally divided between Black and White members, and although the Commonwealth had one peremptory challenge still available, it did not use it to exclude another Black venire person. Although appellant is Hispanic, the case did not involve any issues of race. The district attorney specifically denied using her strikes in a racially motivated manner, and, most significant of all, she offered race-neutral reasons for three of her first four peremptory strikes.[5] Although it certainly would have been better for the purposes of our review if the district attorney had been asked to justify all of her challenges, it does not automatically require that we remand the case, since the prosecutor may rebut the charge of racial discrimination without justifying every strike. *Stern*, 573 A.2d at 1135 n. 3. In light of the foregoing, we find that the Commonwealth sustained its burden of proving that it did not exercise its peremptory challenges in a racially discriminatory manner.[6]

5. As previously stated, the Commonwealth's reason for striking Kim Thompson is apparent on the face of the record, i.e., Ms. Thompson was unemployed and the district attorney favored juror's with a more "stable" situation. In regard to the Commonwealth's last two peremptory challenges, the district attorney was not asked to explain her reasons for her decision to exclude those two Black women from the jury. However, the Commonwealth's reason for excluding one of the potential jurors, Brenda Davis, is obvious on the face of the record, i.e., Ms. Davis' son was incarcerated on drug-related charges and appellant was charged with violations of the Drug Act. *Cf., Commonwealth v. Smulsky*, 415 Pa.Super. 461, 609 A.2d 843 (1992) (juror properly struck because of past involvement with criminal justice system); *Jackson, supra* (juror properly struck because of uncle's arrest).

6. Appellant also contends that the Commonwealth discriminated against Filipinos when it struck Ms. Gabasa. However, as we have previously stated, the Commonwealth offered a legitimate race-neutral reason for excluding her, i.e., the district attorney feared that Ms. Gabasa may have difficulty in understanding the testimony because Ms. Gabasa was difficult to understand when she spoke.

In addition, appellant contends that the Commonwealth discriminated against women since every one of its peremptory challenges was

■ Second, appellant contends that the trial court erred in failing to give the jury a "low-grade" charge concerning expert testimony. Officer Boucher had been qualified as an expert on narcotics trafficking. He testified that the manner in which the cocaine *sub judice* was packaged was consistent with drug distribution, not mere possession. N.T., 6/25/90, pp. 129–130. Appellant contends that Officer Boucher did not personally examine the cocaine and its packaging and, therefore, a "low-grade" jury instruction was necessary. However, we disagree.

■ An instruction that expert opinion testimony is "low-grade" evidence is proper when: 1) The expert's opinion is based on facts recited in a hypothetical question; or 2) The expert's opinion is contradicted by direct evidence. *Commonwealth v. Jackson,* 481 Pa. 426, 392 A.2d 1366 (1978); *Commonwealth v. Thomas,* 448 Pa. 42, 292 A.2d 352, 357 (1972). Instantly, Officer Boucher was able to observe the cocaine and its packaging in question, although he did not remove the cocaine from the transparent evidence bag. N.T., 6/35/90, p. 129. The district attorney asked Officer Boucher whether a person who possessed similarly packaged cocaine possessed the drugs with the intent to deliver them or for personal use? Officer Boucher responded that a person who possessed a similar cache of cocaine—eighteen twenty dollar packets— would do so with the intent to deliver them. We find that Officer Boucher's testimony was based on his personal observation of the drugs. In addition, there was no direct evidence which conflicted with Officer Boucher's conclusion. This is

use to strike women from the venire. As we have previously stated, we do not believe that the Commonwealth exercised its challenges in a discriminatory manner, and therefore, we need not address this claim further. We note the issue of extending *Batson, supra,* to gender has not been addressed by the Pennsylvania judiciary, and the Federal judiciary has issued conflicting opinions on the issue. In *United States v. DeGross,* 913 F.2d 1417 (9th Cir.1990), *affirmed on rehearing en banc,* 960 F.2d 1433 (9th Cir.1992), the Ninth Circuit held that equal protection principles prohibit the exercise of peremptory challenges on the basis of gender. However, in *United States v. Hamilton,* 850 F.2d 1038 (4th Cir.1988), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990), the Fourth Circuit declined to extend *Batson* to include gender.

obvious when one considers that appellant testified that he did not possess any drugs, not that he possessed them for his personal use. N.T., 6/26/90, p. 16. Therefore, the lower court did not err in failing to give a "low-grade" charge in this case.[7]

Third, appellant contends that his prior attorneys rendered ineffective assistance of counsel. Specifically, appellant contends that trial counsel and his first successor erred in failing to raise his *Batson* issue in his post-verdict motions. In addition, prior counsel were ineffective in failing to request a "low-grade" charge and failing to preserve the issue for appeal. When reviewing an attack on counsel's stewardship, we are guided by the standard which was set forth in *Commonwealth v. Graham*, 522 Pa. 115, 118, 560 A.2d 129, 130 (1989) as follows: "The ineffectiveness of counsel is shown where there is merit to the underlying claim, the course chose by counsel does not have a reasonable basis, and the defendant shows prejudice." *See also, Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989). Since we have found that neither the *Batson* issue nor the "low-grade" charge issue is meritorious, appellant cannot prevail on a claim of ineffective stewardship.

■ Fourth, appellant contends that the trial court erred when it permitted the Commonwealth to impeach defense witness Jimmy Colon with a criminal offense which was not one of *crimen falsi*. At trial, Jimmy Colon testified that he saw appellant being arrested and that the police searched him and the area around him and found nothing. N.T., 6/25/90, pp. 148–154. On cross-examination, Colon testified that when appellant was being arrested, the other persons in the area "got lost." When asked why he did not "get lost", appellant responded, "Why was I to get lost?" N.T., 6/25/90, p. 163. Also on cross-examination, Colon was asked whether he liked the police, and he responded "Why not?" N.T., 6/25/90, pp. 168–169.

7. Moreover, although the lower court did not specifically instruct the jurors that "opinion evidence is the lowest form of evidence", the lower court did instruct the jurors that they did not have to accept the opinion of the expert and that they could make independent inferences from the circumstantial evidence surrounding appellant's possession of the drugs. N.T., 6/26/90, pp. 128–129.

In rebuttal, the Commonwealth offered evidence to show that Colon had been arrested on the charge of possession of a controlled substance, and that, due to his failure to appear in court, a bench warrant for his arrest had been issued. The evidence further demonstrated that bench warrant was outstanding at the time of appellant's arrest.[8] The Commonwealth sought to prove by admission of this evidence that Colon had reason to avoid the police at the time of appellant's arrest. In addition, the evidence was offered to show that appellant had a reason to dislike the police. Upon admitting this evidence, the trial court instructed that jury:

> The evidence that you have heard, ladies and gentlemen, on the Commonwealth's rebuttal, you are to consider only for the limited purpose as it may tend to prove the bias of the witness, Colon, or as it may intend (sic) to contradict his presence at the time of the incident. That is the only purpose for which that testimony was submitted to you. You must not consider it for any other. You must see whether it contradicts his presence there and also, bias to his testimony.

N.T., 6/26/90, p. 75.

■ It is clear that a party against whom a witness is called always has the right to show by cross-examination that the witness is biased or has an interest in the result of the trial. *Commonwealth v. Butler*, 529 Pa. 7, 601 A.2d 268, 271 (1991); *Commonwealth v. Williams*, 524 Pa. 218, 227, 570 A.2d 75, 80 (1990); *Commonwealth v. Collins*, 519 Pa. 58, 63–66, 545 A.2d 882, 885–886 (1988). One way of impeaching a witness' credibility is admission of prior convictions for crimes involving dishonesty or false statement. *Commonwealth v. Randall*, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987); *Commonwealth v. Gordon*, 355 Pa.Super. 25, 27–28, 512 A.2d 1191, 1192 (1986).

Appellant argues that since Colon's conviction was not for a *crimen falsi,* the lower court erred by admitting evidence of his conviction. We would be inclined to agree with appellant had the evidence in question been admitted *solely* to show

---

**8.** Colon was subsequently convicted of possession of a controlled substance.

Colon's general bias against the police. Otherwise, any conviction could be used to impeach the credibility of a witness on the grounds that he was biased against the police in general. *But see, Williams, supra* (defense witness's conviction was admissible to show possible bias against accomplice because accomplice's police officer-father was involved in a criminal investigation of the witness); *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989) (evidence as to whether defendant's character witness had commented favorably about convicted killers of police officers was relevant in prosecution for murder of a police officer and was admissible to indicate witness had enmity towards police officers).

■ However, instantly, evidence of appellant's arrest and conviction on the charge of possession of a controlled substance was necessary to demonstrate not only that Colon was biased against the police, but also *that a bench warrant had been issued for his arrest.* The evidence was not offered to smear Colon's character or to prove his criminal propensity. Rather, the evidence tended to establish that Colon had a reason to avoid the police, and, therefore, it was unlikely that Colon watched appellant's arrest from a close distance for approximately ten minutes. N.T., 6/25/90, pp. 152–53. We find that the probative value of this evidence out weighed its prejudicial effect, and we will not reverse the trial court's decision to admit the evidence. *Abu–Jamal,* 555 A.2d at 854 (question of whether prejudice outweighed relevance is discretionary ruling subject to limited review).[9]

■ Appellant next complains that the evidence was insufficient to sustain his conviction for possession of cocaine with

9. Moreover, assuming such evidence was impermissibly prejudicial and should not have been admitted, we find that the error was harmless in light of the overwhelming evidence of appellant's possession of the cache of cocaine. *See Commonwealth v. Williams,* 524 Pa. 404, 409, 573 A.2d 536, 539–540 (1990), *citing Commonwealth v. Story,* 476 Pa. 391, 406, 383 A.2d 155, 162 (1978). Both arresting officers testified that they witnessed appellant toss a film canister containing six packets of cocaine to the ground upon their approach and that they found an additional twelve packets on appellant's person. Such testimony would be more than sufficient to overcome Colon's testimony that he did not see the police find any drugs.

intent to deliver. "The test of the sufficiency of the evidence in a criminal case is whether, viewing the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the [crime] charged beyond a reasonable doubt." *Commonwealth v. Carter,* 329 Pa.Super. 490, 496, 478 A.2d 1286, 1288 (1984); *Commonwealth v. Peduzzi,* 338 Pa.Super. 551, 553–557, 488 A.2d 29, 31–32 (1985).

The facts as set forth by the Court below are as follows:

It was August 22, 1988, 1:00 o'clock in the morning; the streets were deserted. Police Officers Pinto and Ball were in their van on routine patrol on Somerset Street in North Philadelphia, a high drug area. They were about 15 feet away when they espied on the northwest corner of Somerset and Swanson Streets, a lone figure, acting inexplicably erratically. He took one look at the approaching police van and dropped a black 35 millimeter film canister from which spilled six green packets similar to narcotic packages that the officers had seen before in that area. Officer Ball proceeded to pick up the six green packets which contained a white chunky substance he suspected to be cocaine. Officer Pinto directed his attention to defendant, taking from his person a total of 2 green cellophane bags containing 12 packets of white powder. The contents of all the 18 packets tested positive for cocaine, aggregating in weight over three grams. An expert was to opine that the possessor possessed the substance for delivery, not for personal use.

Defendant had a different story: he was returning a video tape to a friend, John. Just before the police arrived, John had been working on his car. He was watching the car until [John] got back when the police came upon him. In fact they should have gone across the street where he had observed several drug transactions go down. Jimmy Colon, a friend who had just happened to pass saw the police position defendant spread-eagle like against the patrol van

while one of them looked around futily for drugs.[10] (Footnote added.)

Trial Court Opinion, pp. 1–2.

We agree with the trial court that the evidence was more than sufficient to sustain appellant's conviction for possession with intent to deliver. The officers observed appellant in possession of eighteen twenty-dollar packets of cocaine, and the expert testified that such a cache of cocaine was possessed for delivery, not for personal use. *Cf., Commonwealth v. Cardona,* 316 Pa.Super. 381, 463 A.2d 11 (1983) (evidence that appellant possessed twenty bags of heroin, when combined with expert testimony that such a cache of drugs was more consistent with delivery than personal use, was sufficient to sustain a verdict of guilty of possession with intent to deliver).

█ Finally, appellant contends he was denied a fair trial and his defense was prejudiced by the open hostility between defense counsel and the trial judge. Although our review of the record does reveal a somewhat acrimonious relationship between the trial judge and defense counsel, it also reveals that these exchanges did not prejudice appellant.

First, the majority of the exchanges of which appellant complains were held either at side bar or when the jury was not in the courtroom. Second, the lower court instructed the jurors that they were the sole arbiters of fact, that arguments and statements of counsel were not evidence, that they would not be privy to side-bar discussion, that they should disregard any side-bar discussion that they might overhear and that they should not make any inferences from the side-bar discussions. And third, those times which the trial judge was forced to reprimand counsel were a proper exercise in his authority to control the proceedings. *Cf., Commonwealth v. Celijewski,* 324 Pa.Super. 185, 471 A.2d 525 (1984).

█ Further, a defendant is not entitled to a new trial because of the trial court's chastisement of his trial counsel, unless that criticism reflects animosity towards or disbelief of

**10.** Testimony revealed that Jimmy Colon did not know appellant at the time of his arrest, but later came to know appellant.

the defendant or partiality favoring the Commonwealth. *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Council,* 355 Pa.Super. 442, 449–451, 513 A.2d 1003, 1007 (1986), *allocatur denied,* 519 Pa. 664, 548 A.2d 253 (1988). Upon review, we find that the exchanges between counsel and the court did not adversely affect appellant's defense, and, therefore, appellant is not entitled to a new trial.

In conclusion, we find that appellant's assertions of trial court and counsel error are meritless. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.