645 A.2d 853

**COMMONWEALTH of Pennsylvania**

v.

**Aaron WHEELER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 6, 1994.

Filed July 28, 1994.

270

Jay S. Gottlieb, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and KELLY and MONTGOMERY, JJ.

ROWLEY, President Judge.

As a result of his participation in a robbery and murder occurring at a Philadelphia convenience store, Aaron Wheeler (hereinafter "appellant") was found guilty by a jury of second degree murder, robbery, criminal conspiracy and possession of an instrument of crime; he has filed the instant appeal from his judgment of sentence. On appeal, appellant claims that he is entitled to a new trial for the following reasons: (1) because the Commonwealth peremptorily struck a disproportionate number of black jurors during jury selection; (2) because the Commonwealth used appellant's name while cross-examining appellant's co-defendant regarding the co-defendant's out-of-court statement; (3) because the Commonwealth made reference to "a second murder" while questioning appellant's alibi witness; and finally, (4) because the Commonwealth's closing remarks were "calculated to move [the jury] from their position of sworn impartiality." Having thoroughly examined these claims, we find them all to be completely without merit and we therefore affirm.

The facts relative to this appeal were accurately and succinctly stated by the trial court, as follows:

"On October 31, 1991, Jai Ho Lee, the victim, was working as the manager of the Stop and Go Deli at Broad and Susquehanna Streets in Philadelphia[, Pennsylvania]. At about 6:39 p.m. Jesse Bond and [appellant], the defendants, entered the store and Bond pointed a gun at [an] employee, Yang–Jin Kim, telling him to 'open the register and give up the money.' At that point [in time,] Jai Ho Lee walked to the cash register, which was open, shut the [cash] drawer, locked it, and threw the key on the floor. Immediately

after [Lee] threw the keys [to] the floor, Bond, standing about four feet from him, shot [Lee] in the chest, causing his death. [Appellant] entered the store with Bond, served as a look-out [during the robbery and murder] and fled [from the store] with Bond.

The case was tried before th[e] [trial] court from February 2 to February 8, 1993. [Appellant] was convicted of Murder in the Second Degree, Robbery, Possessing and Instrument of a Crime and Conspiracy."

(Trial Court Opinion, 10/5/93, p. 1–2). "Post–Sentence Motions were heard and denied on July 28, 1993. This [timely] appeal followed." *Id.*

█ Appellant's first claim on appeal is that he was not tried by a fair and impartial jury because the Commonwealth used its peremptory challenges in a racially discriminatory manner in violation of the United States Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In reviewing this claim, "we are mindful that an appellate court will reverse a trial court's finding of no discrimination only if that finding is clearly erroneous." *Commonwealth v. Correa*, 423 Pa.Super. 57, 65, 620 A.2d 497, 501 (1993).

█ We observe that:

"*Batson* requires that a criminal defendant's jury be selected without purposeful discrimination. Once a defendant presents a *prima facie* case that such purposeful discrimination has occurred, the burden shifts to the prosecution to supply a legitimate, race-neutral reason for striking a potential juror. [citations omitted]. The Commonwealth does not meet its burden by stating baldly that its actions involved no racial motive or were done in good faith. [citations omitted]."

*Commonwealth v. Smulsky*, 415 Pa.Super. 461, 465, 609 A.2d 843, 844–845 (1992), *appeal denied*, 532 Pa. 663, 616 A.2d 984 (1992). Further:

"[i]n order to establish a *prima facie* case of purposeful discrimination after [the United States Supreme Court's

decision in] *Powers* [*v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) ], a defendant need only show the circumstances of his case raise an inference that the prosecutor used his peremptory challenges to exclude veniremen from the petit jury on account of race."

*Commonwealth v. Correa, supra.* at 65, 620 A.2d at 501.

"Appellant's presentation of a *prima facie* case is unchallenged in this appeal. Therefore, we must carefully examine the Commonwealth's explanations for excluding black persons to determine if there is support for the trial court's conclusion that those explanations were, in fact, valid and nondiscriminatory. The primary responsibility for assessing the validity of the Commonwealth's explanations is vested in the trial court, [citation omitted], for

'a finding of intentional discrimination is a finding of fact' entitled to appropriate deference by a reviewing court. Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."

*Commonwealth v. Smulsky, supra.* at 467, 609 A.2d at 845, *citing Batson v. Kentucky, supra.* at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21.

 The Commonwealth's first and second peremptory challenges were against two black venire persons, Kenneth Stewart and Effie Hall. The trial court concluded, and we concur, that these strikes were racially neutral on their face and thus, no reasons were given by the Commonwealth on the record with regard to these strikes. Mr. Stewart was struck because he "absolutely" had qualms about sitting in judgment of another person and because he felt that police officers were not always worthy of belief, while Ms. Hall was challenged because her brother had been tried on murder charges. The Commonwealth's third, fourth and fifth peremptory challenges were made to white jurors.

 The next black juror who was peremptorily challenged by the Commonwealth was Kim Clark. The prosecutor ex-

plained that Ms. Clark was challenged because she seemed uninterested in participating in the proceedings. Where a prosecutor has an impression of a juror as disingenuous, a legitimate, race-neutral reason for the peremptory challenge exists. *Commonwealth v. Smulsky, supra.* at 467, 609 A.2d at 846. Lottie Richardson was the seventh peremptory strike used by the Commonwealth. The trial court did not ask the prosecution to justify this strike because the reason therefor was apparent from the record; Ms. Richardson had a relative who had been arrested and charged with conspiracy.

■ Geraldine McClendon was the eighth person excluded from the jury by the Commonwealth and the prosecutor explained that she was struck because she equivocated with regard to her ability to impose the death penalty. This is clearly a race-neutral reason for striking a potential juror. *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). The Commonwealth's ninth and tenth peremptory challenges were used respectively against Mary A. Thompson and Betty R. Williams. We agree with the trial court that the reasons for these challenges are apparent on the face of the record because Ms. Thompson's ex-boyfriend had committed a murder and Ms. Williams' nephew has been charged with both murder and theft.

■ Following the Commonwealth's use of a peremptory strike against a hispanic juror, it challenged two black venire persons, Brian Reed and William Williams. The prosecutor stated that he struck both of the jurors because they equivocated on the death penalty issue. As noted above, equivocation with regard to one's ability to follow the court's instructions on the law and impose the death penalty in an appropriate case is a legitimate, race-neutral reason for exercising a peremptory challenge against a potential juror. *Commonwealth v. Hardcastle, supra,* at 244, 546 A.2d at 1105.

■ The fourteenth and fifteenth peremptory strikes by the Commonwealth were against Nicole Gilyard and Joyce Hinton, respectively. Ms. Gilyard was struck because she had

a close friend who was awaiting trial on the charge of robbery, which is clearly a race-neutral reason for striking a potential juror, *Commonwealth v. Hardcastle, supra.* at 245, 546 A.2d at 1105, while Ms. Hinton was challenged because she became extremely incensed when the Commonwealth asked her if she was sure that she could impose the death penalty in an appropriate case. The trial court, who observed the demeanor of Ms. Hinton first-hand, immediately accepted the prosecutor's explanation as race-neutral, as do we.

Having carefully reviewed the record, and the relevant legal authorities, we conclude that the reasons given by the Commonwealth for peremptorily challenging the above-noted venire persons were sufficiently race-neutral for the trial court to conclude that they were legitimate, rather than pretextual. Appellant is not entitled to a new trial based on his allegation that the Commonwealth improperly engaged in racial discrimination while selecting his jury.

■ Appellant's second assignment of error concerns the Commonwealth's cross-examination of appellant's co-defendant, Jesse Bond. Appellant contends that he is entitled to a new trial, pursuant to the United States Supreme Court's ruling in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because in cross-examining appellant's co-defendant, Jeese Bond, the prosecutor made reference to Bond's out-of-court statement naming appellant as his accomplice in the events of October 31, 1991. "In *Bruton,* [*supra.*], the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when his *non-testifying* co-defendant's confession *naming him* as a participant in the crime is introduced at their joint trial." *Commonwealth v. Wharton,* 530 Pa. 127, 139, 607 A.2d 710, 716 (1991) (emphasis supplied).

The Commonwealth argues that its line of questioning in cross-examining Bond was not violative of *Bruton* because co-defendant Bond testified at trial that his statement had been concocted by the police and that he had only signed it because he was "frightened." (Notes of Testimony, 2/5/93, p. 750–763).

The Commonwealth cites *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) in support of its argument in this regard.

> "In *Nelson,* [*supra.*], the United States Supreme Court held that where a co-defendant in state court took the stand at a joint trial in his own defense, and denied making an alleged out-of-court statement implicating [the] defendant, and proceeded to testify favorably to defendant concerning the underlying facts, the defendant was denied no rights under the Sixth or Fourteenth Amendments...."

*Commonwealth v. Baker,* 511 Pa. 1, 15, 511 A.2d 777, 785 (1986). We agree with the Commonwealth that no *Bruton* violation occurred in this case[1].

1. Furthermore, as noted by the trial court, even assuming that the rule enunciated in *Bruton* was violated by the prosecution's reference to Bond's unredacted statement:

 > "A violation of the *Bruton* rule does not automatically require reversal of a criminal conviction. *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992). There need be no grant of a new trial where the prejudicial effect of the co-defendant's admission is so insignificant by comparison to the evidence against him that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. *Id.* at 143–144, 607 A.2d at 718. A determination that such use was harmless must be reached by balancing the prejudicial effect of the statement with the quality of the evidence establishing defendant's guilt. *Id.*
 >
 > Viewed in the context of the other evidence against him, the mention of [appellant's] name in the cross-examination of [co-]defendant Bond implicating [appellant] in the crime did not constitute prejudicial error. The evidence against [appellant] which had already been presented in the prosecution's case in chief was overwhelming. His confession described his participation in the planning and execution of the crime in detail and two eyewitnesses were able to identify him as the person who had participated in the robbery and killing with [co-]defendant Bond.
 >
 > Moreover, immediately following the mention of [appellant's] name, and again in its final instructions to the jury, the court cautioned them that 'the statement of one defendant may not be used against the other defendant in any way ... The two defendants are being tried at the same time, but the evidence against each must be separated. In order to be a fair trial to both defendants, the evidence against each must be considered separately, and I instruct you that you may not consider the evidence of the statement of one defendant against the other. And further, as I have told you before, and will probably tell you again, the questions are not evidence. It is only the answers which are evidence, members of the jury.' "

Next, appellant asserts that it was error for the trial court to overrule his motion for a mistrial because "[t]he Commonwealth purposefully introduced evidence of another crime [committed by appellant,] a murder, to discredit the testimony of [appellant's] alibi witness." As our Supreme Court observed in *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993):

> "There is no *per se* rule that requires a new trial for a defendant every time there is a reference to prior criminal activity ... '[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy.' ... Further, the reference to prior criminal activity must be prejudicial to the defendant, with prejudice resulting 'where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior offense.'
>
> However, it is possible to eradicate any possible prejudice resulting from reference to prior criminal activity by the defendant.... An immediate curative instruction to the jury may alleviate any harm to the defendant that results from reference to prior criminal conduct.
>
> [*Commonwealth v. Stephen Quintin Morris*, 513 Pa. 169,] 175–176, 519 A.2d [374,] 376–377 [ (1986) ]. (citations omitted). *See Commonwealth v. Kelvin Morris*, 522 Pa. 533, 564 A.2d 1226 (1989).
>
> In determining whether a reference to prior criminal activity requires the granting of a new trial, we must analyze each case individually for prejudice."

*Commonwealth v. Zook, supra.* at 96, 615 A.2d at 10.

In the instant case, appellant complains of the following on-the-record exchange between the Commonwealth and Rosalyn Wheeler, appellant's mother:

(Trial Court Opinion, 10/5/93, p. 4). Thus, even if there had been a *Bruton* violation, which we conclude there was not, appellant would not be entitled to a new trial on this basis.

Q. Let me tell you what we're dealing with. We're dealing with the homicide that occurred October 31, 1991, at Broad and Susquehanna, [at] approximately 6:39 in the evening, okay?

A. Okay.

Q. When did you first become aware that [appellant] was accused of that crime?

A. On the 27th of November.

Q. And he told you that he was accused of that crime?

A. No. He told me, "Mom, I have been arrested for a second murder."

Q. Now, when he told you that he had been—when he told you that he had been arrested for a second murder—

(Notes of Testimony, 2/5/93, p. 821). After these remarks had been made, appellant objected and a recess was taken; appellant moved for a mistrial out of the presence of the jury. This request was denied by the trial court, but upon the jury's return, the court gave the following curative instruction:

"THE COURT: Members of the Jury, with respect to the testimony of the witness Rosalyn Wheeler, I want to tell you that any unrelated incidents or arrests involving any of these defendants is not relevant to this case, not proper for your consideration, and not admissible. It should be totally and completely disregarded."

(Notes of Testimony, 2/5/93, p. 821).

Clearly, in the case *sub judice,* as in *Zook,* the witness' unfortunate remark was not intentionally elicited by the Commonwealth, but rather was volunteered by her on cross-examination. Further, as in *Zook,* the answer given by Ms. Wheeler was unresponsive to the Commonwealth's question and the Commonwealth did not attempt to take advantage thereof. Thus, we conclude, as did our Supreme Court in *Zook,* that the trial court properly refused appellant's request for a mistrial because any prejudice that he suffered as a result of his mother's unforeseeable blunder was cured by the court's cautionary instruction to the jury.

■ Appellant's fourth and final contention here on appeal is that he is entitled to a new trial because the Commonwealth made several allegedly prejudicial remarks in its summation to the jury. We note, however, that:

> " '[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial.' [citation omitted]. Rather, the focus is on what, if any, effects the comment had on the jury. A new trial is required when the effect of the District Attorney's comments 'would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weight the evidence objectively and render a true verdict.' [citations omitted]. Further, this decision is for the trial court to make. Our role is to determine solely whether the trial court abused its discretion. [citation omitted]."

*Commonwealth v. Faulkner,* 528 Pa. 57, 77, 595 A.2d 28, 39 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1990). "Furthermore, the 'prejudicial effect of the district attorney's remarks must be evaluated in the context in which they occurred.' " *Commonwealth v. Carpenter,* 511 Pa. 429, 439, 515 A.2d 531, 536 (1986), *quoting, Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986, 989 (1983).

■ The first two comments to which appellant makes objection, were that "every armed robbery is a first degree murder waiting to happen" and that the defense was asking the jury for a "discount" to second degree murder because the killing was in the course of a felony. Having carefully reviewed the notes of testimony, it is clear to us, as it was to the trial court, that these remarks were intended to rebut defense counsel's closing remarks, where it argued that the Commonwealth had, at most, proven second degree murder. Neither of the Commonwealth's remarks in this regard was of such a nature that the jury would form in their minds fixed bias or hostility toward appellant so that they could not weigh the

evidence and render a reliable verdict[2].

■ The final remark that appellant found objectionable during the Commonwealth's closing argument was the prosecutor's statement that the defendants should be held "accountable to the law of a civilized people." Although appellant contends that this statement was inflammatory and prejudicial, we conclude that it was merely a request for a guilty verdict based on the law and the evidence[3]. It was not of such a nature as to fix a bias or hostility in the minds of the jury. Appellant is not entitled to a new trial based on his allegations of prosecutorial misconduct.

Judgment of sentence affirmed.

2. Moreover, because appellant was convicted of second degree murder, rather than first degree murder, it is obvious that he was not prejudiced by the Commonwealth's comments regarding the degree of guilt.

3. Further, while appellant initially moved for a mistrial, he ultimately agreed that a cautionary instruction to the jury (to the effect that the defendants are entitled to all the rights of citizenship and that they are innocent until proven guilty) would be sufficient. Therefore, he may not argue that the instruction to which he agreed was insufficient.