## Commonwealth v. Tapper

26

*William E. Moore,* for the Commonwealth.
*Louis R. Busico,* for defendant Pyatt.
*Christina A. King,* for defendant Tapper.
*Robert W. Suter,* for defendant Elliott.

BIESTER, Jr., *J.,* September 8, 1995—On January 11, 1995, after a three day jury trial, defendant, Jason Tapper, was convicted of animal fighting, cruelty to animals, several conspiracy counts and related summary offenses. On March 10, 1995, after a pre-sentence investigation, defendant was sentenced to one and one-half to three years imprisonment in a county correctional facility. Defendant has filed an appeal to the Superior Court.

The background of this case is as follows. On July 3, 1994, defendant, along with his co-defendants, Jan Pyatt and Roy Elliott, attended a picnic at the home of Mary Callahan in Warminster, Bucks County, Pennsylvania. At this time, Mrs. Callahan was the owner of a 6-1/2 year old dalmatian named Duke. Mrs. Callahan was planning to move to a new residence where she would be unable to bring Duke.

At the party, defendant and Pyatt stated to Mrs. Callahan that they lived on a farm and would be willing to take Duke. Mrs. Callahan made the defendants aware of the fact that Duke had bitten a girl earlier in the day and that he had some problems with strangers. Upon hearing this, defendant stated to Mrs. Callahan, "I like a vicious dog." Mrs. Callahan agreed to allow defendant and Pyatt to take Duke for the night, with the condition that she check on the premises the next morning. As defendants and Duke were getting into the car to leave, defendant stated while looking at Duke, "We're going to have a really good time." Later that afternoon, defendant, Pyatt, and another co-defendant, Roy Elliot, left the property with Duke and returned to the house that defendant and Pyatt rented.

Mike Cardell testified that he visited the home of defendant on July 3, 1994. He stated that defendant and Pyatt arrived soon after he did, sometime after 6 p.m., and in their possession was Duke. Defendant, Pyatt, Elliot, Duke and a pit bull all went to the field next to the house.

After nearly a half an hour, defendant, Pyatt, Elliot and Pyatt's pit bull all returned to the house. Duke, however, did not return. Cardell testified that upon returning from the field, defendant had a razor blade, a dog tail, and duct tape in his possession.

Brian Hattrich, a resident of the house, testified that he also was at defendant's house the evening of July 3, 1994. He stated he observed defendant and Elliot go to the field carrying sticks. He also stated that Pyatt followed them, accompanied by his pit bull, Lilly.

Between five and 10 minutes later, Hattrich heard a dog whimpering from the field. Hattrich spoke with the defendant when defendant returned to the house. Defendant told Hattrich that he had cut Duke's ears

off and intended to sew them onto a hat. Defendant was holding Duke's tail.

Hattrich further testified that Pyatt told him that they had gotten a dog from a party and tied it to a tree in the field. Pyatt stated that they taped the dog's mouth shut and that he was going to let his pit bull attack Duke. Pyatt stated that his pit bull had met Duke in the air, and then pinned Duke to the ground.

Denise Orsini was at both the Callahan picnic on the afternoon of July 3 and at defendant's home that evening. At about 8:30 p.m., while at defendant's house, Ms. Orsini asked defendant how Duke was doing. Defendant told her that Duke had jumped out of the car. At about 11:30 p.m. that night, Ms. Orsini called Mrs. Callahan and told her that Duke had jumped out of the car. Mrs. Callahan then called the police.

On July 10, 1994, Jeanette Rilling of the Bucks County SPCA received a call from the Warrington Township Police concerning a dead dog in a field. The property to which Ms. Rilling responded was the house of defendant and Pyatt. Ms. Rilling smelled a strong odor of decay and found a badly decomposed dalmatian in a hedgerow in a field adjacent to defendant's residence. Defendant and Pyatt were present when the dalmatian was found.

At that time, defendant told Ms. Rilling that he, Pyatt and Elliot had taken the dalmatian, later identified as Duke, to the field on July 3. He stated that Duke had attacked them, forcing them to kill Duke with cinderblocks.

That same evening, defendant made a written statement to Officer Daniel C. Gallagher of the Warrington Township Police Department. Defendant stated that Duke jumped out of the car on the ride home from Mrs. Callahan's. They captured Duke and returned to

the house where they took Duke for a walk. Defendant then claimed Duke attacked them forcing defendant to hit Duke with cinderblocks until Duke was dead. Officer Gallagher observed no injuries to defendant.

Ms. Rilling returned to the property on August 3, 1994, with a search warrant for dalmatian parts, two pit bulls, and evidence of dog fighting. Upon investigation of the property, a piece of duct tape was found near a tree. Also found were cinderblocks and a board approximately 20 feet from where Duke was found.

Dr. Charles Malinauskas, a licensed veterinarian, testified that he examined the remains of Duke. The injuries to Duke included a severed off tail, throat, ears, and multiple skull, rib and jaw fractures. He stated that the tail and ears were cut off while Duke was alive.

Dr. Malinauskas further stated that the dog hair found on the duct tape was similar to Duke's hair. He also testified that there were puncture wounds on Duke which may be consistent with bite wounds from a pit bull.

Initially, defendant contends that the verdict was contrary to law, and against the weight and sufficiency of the evidence, alleging that the defendant was the owner of Duke. These complaints do not apply to the felony animal fighting convictions as defendant need not be the owner of an animal under 18 Pa.C.S. §5511(h.1).

As to the misdemeanor convictions under section 5511(a), defendant was found guilty of "willfully and maliciously killing, maiming or disfiguring any domestic animal of another person." 18 Pa.C.S. §5511(a)(1)(i). It is clear that at the time of the killing of Duke, Mrs. Callahan was still Duke's owner. At the July 3 party, she allowed Duke to spend the night with defendants contingent upon her inspection of the premises the next day. When she was told that Duke had jumped out

a car window, she immediately began searching for Duke by driving around looking for Duke and placing pictures of Duke in public places.

It is clear that the condition precedent, Mrs. Callahan visiting the premises, had not yet occurred. Thus, there was no transfer of ownership by gift. See *Ferraro v. Singh,* 343 Pa. Super. 576, 495 A.2d 946 (1985). Duke was still the property of Mrs. Callahan and pursuant to section 5511(a)(1), was the property "of another." Therefore, the convictions under section 5511(a)(1) for cruelty to animals "of another" are appropriate.

Defendant next contends that this court erred in allowing witnesses to testify as to statements made by co-defendants without redaction. Defendant claims that this was in violation of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton,* the United States Supreme Court held that in a joint trial the admission into evidence of a confession by a co-defendant violates the defendant's constitutional right to confront adverse witnesses under the Sixth Amendment to the United States Constitution.

The *Bruton* rule does not apply in this case since defendant's two co-defendants took the stand. The *Bruton* rule only applies to "non-testifying" co-defendants. *Commonwealth v. Wharton,* 530 Pa. 127, 139, 607 A.2d 710, 716 (1992); *Commonwealth v. Wheeler,* 435 Pa. Super. 266, 645 A.2d 853 (1994). Therefore, the statements of defendant's co-defendants were properly admitted. The issue arose in the following context during the district attorney's direct examination of Brian Hattrich.

"Q: Did you have any conversation with Jan Pyatt at that time?

"A: Yes, I did.

"Q: What did Mr. Pyatt say?

"A: Told me that they got a dog from a party, and that they had it tied to a tree in the field.

"Q: Did he say anything else about the dog?

"A: Said that his mouth was taped shut.

"Q: The dog's mouth was taped shut?

"A: Yes.

"Q: Did he say anything else?

"A: He said that he was going to let his dog attack it.

"MR. BUSICO: Objection, your honor. See you at sidebar, sir?

"THE COURT: Overruled.

"BY MR. MOORE:

"Q: What else did Mr. Pyatt say?

"A: Told me that he was going to let his dog Lilly attack the dalmatian."

Also, declarations or acts of one co-conspirator made to third parties in the absence of his co-conspirator are admissible in evidence against both provided that such declarations or acts were made during the course of the conspiracy and in furtherance of the common design. *Commonwealth v. Porter,* 449 Pa. 153, 295 A.2d 311 (1972); *Commonwealth v. Cull,* 418 Pa. Super. 23, 613 A.2d 12 (1992), *affirmed,* 540 Pa. 161, 656 A.2d 476 (1995). It is clear that Pyatt's statements to Hattrich were made during the course of the conspiracy as he indicated that Duke was tied to a tree with his mouth taped shut and that he was "going to let his dog attack it." (N.T. p. 132.)

The statements by Pyatt are also admissible as non-hearsay verbal acts. Where out of court statements are offered to show circumstantial evidence of formation

and existence of a conspiracy, such statements are not hearsay. *Commonwealth v. Cassidy,* 315 Pa. Super. 429, 462 A.2d 270 (1983).

Defendant also alleges that this court erred in allegedly allowing the prosecution to cross-examine a co-defendant as to defendant's prior record. The court did not allow the prosecution to engage in any such line of questioning. We believe defendant is referring to the cross-examination of co-defendant Jan Pyatt which went in part as follows:

"Q: Now, 1992 you were convicted of burglary?

"A: Yes.

"Q: And you got two years probation for that burglary?

"A: Yes, that's correct.

"Q: Burglary, theft, related charges?

"A: I think we were just charged with burglary, that's all.

"Q: Did you steal something in the burglary?

"A: Yes.

"Q: And you said 'we.' Who else was charged with that:

"MR. BERNARDINO: Objection.

"THE COURT: Objection sustained."

The above testimony indicates that defendant's objection was properly sustained. There was no other mention of this issue through the remainder of the trial. Defense counsel never asked the court to declare a mistrial and never pursued the matter further.

We are satisfied that the question asked by the district attorney did not rise to the level of prosecutorial misconduct, especially in light of the fact that an objection was sustained and the matter was not pursued by any

counsel thereafter. There was no reference at all to defendant's prior record. See *Commonwealth v. Gibbs,* 387 Pa. Super. 181, 563 A.2d 1244 (1989).

For the foregoing reasons, all of defendant's post-trial motions are denied.