635 A.2d 1033

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Tracey HORNE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 5, 1993.

Decided Jan. 14, 1994.

Reargument Denied April 4, 1994.*

* Mr. Justice Larsen did not participate in this matter.

Richard A. Lewis, Dist. Atty., Richard E. Guida, Asst. Dist. Atty., Todd B. Narval, for appellant.

Lori J. Barger, Chief Deputy Public Defender, David M. Donaldson, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## ORDER

PER CURIAM:

The Court being evenly divided, the Order of the Superior Court 420 Pa.Super. 637, 610 A.2d 65 is affirmed.

LARSEN, J., did not participate in the decision of this case.

NIX, C.J., files an opinion in Support of Affirmance in which FLAHERTY, J., joins.

FLAHERTY, J., files an opinion in Support of Affirmance in which CAPPY, J., joins.

ZAPPALA, J., files an opinion in Support of Reversal in which PAPADAKOS and MONTEMURO, JJ., join.

PAPADAKOS, J., files an opinion in Support of Reversal.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Chief Justice.

Because I believe that peremptory challenges based solely on a venireperson's residence are too closely tied to a venireperson's race, I would affirm the Superior Court. My reading of *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), compels me to agree with the Superior Court that the prosecutor has not rebutted a *prima facie* case of the discriminatory exercise of peremptory challenges.

The undisputed facts are as follows: Appellee, an African American, was charged with raping a Caucasian woman. The prosecutor, during jury selection, exercised three peremptory

challenges to exclude all African Americans from the jury panel. Appellee then challenged that action under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The trial court ruled that the defendant failed to make out a *prima facie* case of racial discrimination; additionally, it held that even if the defendant had offered a *prima facie* showing, the prosecutor rebutted that claim with race neutral explanations. The first juror challenged was a retired school teacher whom the prosecutor thought was too liberal; the second juror was challenged because he came from a "high crime area," and, therefore, was desensitized to this type of crime. The third juror was excluded for being too vocal during *voir dire*.

The Superior Court reversed the trial court. The Superior Court found that, in regard to the first two jurors, the defendant had made out a *prima facie* case; likewise it found that the reasons offered by the prosecutor were pretextual and not race neutral. I find that with regard to the juror who was excluded on the basis of his neighborhood being a "high crime area," the Superior Court was correct. Accordingly, I would affirm.

In *Hernandez*, the United States Supreme Court held that a prosecutor's use of peremptory challenges to exclude two Latin–American Spanish speaking jurors did not violate the defendant's equal protection rights. 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The defendant established a *prima facie* case of discrimination, which the prosecutor rebutted with an explanation that he felt that, while he did not seek to exclude all Spanish speaking venirepersons, these particular jurors appeared unwilling to accept the official court interpreter's English translation. The Supreme Court affirmed in a 6–3 decision. Justice Kennedy, writing for a four-member plurality, found that the trial judge did not commit clear error by believing the prosecutor's explanation to exclude these two jurors. *Id.* at ——, 111 S.Ct. at 1872, 114 L.Ed.2d at 412. The plurality emphasized, however, that it would have "face[d] a quite different case if the prosecutor had justified his peremptory challenges with the explanation that

he did not want [any] Spanish-speaking jurors." *Id.* at ——, 111 S.Ct. at 1872, 114 L.Ed.2d at 413.

In the instant matter, we are facing "a quite different case." The prosecutor excluded this juror because he did not want any juror from "a high crime area." Yet the prosecutor offered no reason why this specific juror would be desensitized to violence. The Superior Court was facing precisely the situation that the Supreme Court of the United States referred to in contrast to the facts of *Hernandez,* to wit: a facially race neutral explanation (residence) that will undoubtedly have a disparate racial effect, that applies to all people in the challenged venireperson's circumstances, rather than only to the challenged venireperson. Therefore, the Superior Court was correct in vacating the judgment of sentence.

The Commonwealth concedes that Appellee established a *prima facie* case of racial discrimination. Once that is established, the burden shifts to the prosecutor to justify his peremptory strikes with race neutral reasons. *Batson v. Kentucky,* 476 U.S. 79, 98, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69, 88 (1986) ("The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried."). The prosecutor's purported reason, that the juror comes from "a high crime area," is not a race neutral explanation.

> Mere place of residence, or any other factor closely associated with race, should not be regarded as a legitimate basis for exercising peremptory challenges without some corroboration on *voir dire* that the challenged venirepersons actually entertain the bias underlying the use of that factor. This is true particularly when, as in this case, the prosecutor can easily ascertain the existence of the alleged bias without use of the overly broad proxy for bias. To hold otherwise would render *Batson [v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),] protections against race discrimination in jury selection illusory.

*Lynn v. Alabama,* 493 U.S. 945, 947–48, 110 S.Ct. 351, 352, 107 L.Ed.2d 338, 340 (1989) (Marshall, J., dissenting from denial of certiorari); *see also United States v. Bishop,* 959 F.2d 820, 825 (9th Cir.1992) ("To strike black jurors who

reside in such [predominantly black] communities on the assumption they will sympathize with a black defendant rather than the police is akin to striking jurors who speak Spanish merely because the case involves Spanish-speaking witnesses."). Therefore, with regard to the portion that addresses the exclusion of this juror, I am in complete agreement with the memorandum opinion and Order of the Superior Court.

In *United States v. Bishop*, the United States Court of Appeals for the Ninth Circuit reversed the defendant's convictions where it found that the prosecutor had exercised a peremptory challenge in a racially discriminatory manner. 959 F.2d 820 (9th Cir.1992). The prosecutor's proffered reason for exclusion was that the juror, an African American who worked in the Compton area in Los Angeles, would be more likely to take the side of a black defendant than the police. 'The Court of Appeals found that

> [t]he proffered reasons (that people from Compton are likely to be hostile to the police because they have witnessed police activity and are inured to violence) are generic reasons, group-based presuppositions applicable in all criminal trials to residents of poor, predominantly black neighborhoods. They amounted to little more than the assumption that one who lives in an area heavily populated by poor black people could not fairly try a black defendant.

*Id.* at 825. The Court of Appeals interpreted *Hernandez* to require a specific reason that a particular juror should be excluded. *Id.* at 825–26. The court found that the prosecutor's reason "[i]mplicitly equat[ed] low income, black neighborhoods with violence, . . . and the experience of violence with its acceptance, . . ." and "[u]ltimately, the invocation of residence both reflected and conveyed deeply ingrained and pernicious stereotypes." *Id.* at 825. The Court of Appeals' analysis is instructive and persuasive; thus, the law requires that in any case where a prosecutor cites residence as a reason for a juror's inability to decide the matter impartially, to rebut a *prima facie* case of discriminatory peremptory challenges, the prosecutor must give a specific reason why that particular

juror has caused the prosecutor to suspect the venireperson's inability to render a fair verdict.[1]

In this case, the prosecutor did not offer any reason particular to this juror that he would not render a fair verdict; instead, he grouped him in with a class of people whom the prosecutor believes could not render a fair verdict, those who live in a "high crime area." Because the very real possibility exists that this excuse will be used to justify challenges which are racially based, and because I believe that the prosecutor himself did not apply this criterion fairly in this specific jury pool, I find that the prosecutor has not provided a race neutral reason to justify the challenge.

Residence is too closely tied to race to accept the prosecutor's explanation.[2] Therefore, I reject the prosecutor's claim that he had a race neutral explanation for this peremptory challenge.[3] Because of the unlawful exclusion of this juror, the Appellee must receive a new trial. See *Commonwealth v. Dinwiddie*, 529 Pa. 66, 72 n. 10, 601 A.2d 1216, 1219 n. 10 (1992).

1. This does not mean that this suspicion must rise to the level of challenging a venireperson for cause. This means that once a defendant has established a *prima facie* case of racially discriminatory peremptory challenges, the prosecutor must offer a reason that is either totally neutral, or, if it would have a racially disparate effect, he must show why this particular juror entertains the alleged bias. *See Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1863, 114 L.Ed.2d at 413 ("We would face a quite different case if the prosecutor had justified his peremptory challenges with the explanation that he did not want Spanish-speaking jurors. It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis.").

2. Particularly troubling is the prosecutor's argument that it was the block on which the venireperson lived that was the high crime area, rather than some other recognized demographic region for which there was reliable statistics and information.

3. I see no problem with this prosecutor's challenging the second African American juror because he was a retired school teacher. First, the prosecutor also challenged another teacher who was Caucasian. Moreover, a profession such as teaching is not overrepresented by minorities, and an exclusion based on that profession would not have a racially disparate effect. (If, however, the prosecutor was to exclude African American teachers but not Caucasian teachers, the above analysis would not apply.)

Accordingly, I would affirm the Order of the Superior Court.

FLAHERTY, J., joins this opinion in Support of Affirmance.

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY, Justice.

Again the court attempts to deal with the subject of peremptory challenges which are by their nature purely subjective. I submit it is not race so much as it is the cultural complexities in our increasingly heterogeneous society which highlight a problem not newly presented. I fear no matter how many rules, guidelines, and the like a court might fashion, when a prospective juror characterized as a minority is challenged, it will be susceptible to the charge that race is a factor, and it well might be the case. The only certain way to completely sanitize the law in this regard is to abolish peremptory challenges altogether and permit only challenges for cause. I am not persuaded, however, to go that far. Peremptory challenges have been an accepted part of the jury selection process for a good number of years and do indeed serve a valid purpose; thus, I am content to deal with a difficult problem on a case by case basis as best can be, given the inherent nature of this type of challenge.

In the case at bar, Mr. Chief Justice Nix in his opinion in support of affirmance expresses cogent reason why the challenge under examination is defective and I join it.

CAPPY, J., joins this opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

ZAPPALA, Justice.

I would reverse the order of the Superior Court and reinstate the judgment of sentence.

The Appellee is a black man who was charged with raping a white woman. During jury selection, the prosecutor exercised eight peremptory challenges, three of which struck black

persons. For each of these strikes, as well as his five strikes against white members of the venire, the prosecutor stated his reasons. The Appellee's challenge to the jury under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was denied, the court finding that the prosecutor had offered legitimate explanations for each peremptory challenge.[1]

The Appellee was ultimately convicted. On appeal, Superior Court reversed the judgment of sentence and granted a new trial, finding the prosecutor's explanations for his use of peremptory challenges to be pretextual and concluding that the challenges had been discriminatory.

In *Commonwealth v. Dinwiddie*, 529 Pa. 66, 601 A.2d 1216 (1992), I observed that, "[i]t is ... difficult to imagine how a court could cite an objective basis for rejecting any nonracial reason for the use of a peremptory offered by the prosecutor. These difficulties are compounded when the trial court's determination is the subject of appellate review," 529 Pa. at 78, 601 A.2d at 1222, making reference to *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In *Hernandez*, a majority of the United States Supreme Court held that a trial court's finding on the issue of discriminatory intent must be affirmed unless it is "clearly erroneous". The Court went on to note that "[w]e have said '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* at ――, 111 S.Ct. at 1871–72, quoting *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

It is essential that the appellate courts recognize and adhere to this standard of review. Peremptory challenges are by nature irrational in a sense. Thus any explanation offered for

1. The court actually held that the defendant had not made out a prima facie case of discriminatory use of peremptory challenges, thus according to the *Batson* scheme the prosecutor was not required to offer any explanation. Opinion at 1034. See also Reproduced Record at 19. As a precaution, however, the court accepted the prosecutor's offer to place his reasons for each peremptory challenge on the record. Opinion at 1034–1035. See also Reproduced Record at 13. For purposes of this appeal, the Commonwealth concedes that the defendant made out a prima facie case, and directs its argument to the legitimacy of the reasons offered by the prosecutor.

their use is bound to involve speculative, subjective, spontaneous reactions, and determining whether these are authentic or pretextual will depend not so much on what explanation is given as on how it is given. Moreover, a reason that may be legitimate in one case may be pretextual in another.[2] Perhaps more so than in any other area, decisions of this type made by the judge on the spot must be given great deference.

Here, from the cold record, as to two of the three challenges the Superior Court found discrimination where the trial court, present during the entire voir dire, found that the prosecutor had given "racially neutral, specific and legitimate reasons for each of his challenges." From the same paper record, three members of this Court find that the prosecutor used the peremptory challenge to intentionally discriminate against one of the members of the venire on account of his race.

While Superior Court made passing reference to the need to give deference to the trial court's finding, the Chief Justice fails to acknowledge the "clearly erroneous" standard of review at all, substituting his own assessment of the evidence for that of the trial judge. ["Because the very real possibility exists that this excuse will be used to justify challenges which are racially based, and because *I believe* that the prosecutor himself did not apply this criterion fairly in this specific jury pool, *I find* that the prosecutor has not provided a race neutral reason to justify the challenge." Opinion in Support of Affirmance at 1035 (emphasis added) ].

I am also troubled by the manner in which the Chief Justice concludes that "residence in a high crime area", which on its face is unrelated to race, is not a race neutral explanation. Opinion in Support of Affirmance at 1034. A statement of one justice of the United States Supreme Court (joined by one other justice) dissenting from the denial of certiorari, of

---

**2.** Ironically, there would seem to be a potential for undermining the effectiveness of *Batson* by sanctioning wide ranging appellate review. If, for example, by case law the appellate courts were to decide on the "legitimacy" of certain reasons to strike a minority juror, attorneys could simply compile a list and recite one of the "approved" reasons while still subjectively intending a discriminatory purpose.

course carries no precedential weight.[3]  Neither is a decision of the United States Court of Appeals for the Ninth Circuit binding on this Court.  Although the Chief Justice prefaces his reliance on *United States v. Bishop*, 959 F.2d 820 (9th Cir.1992), by stating that "[t]he Court of Appeal's [sic] analysis is instructive and persuasive," *id.* at 1035, he overstates the case in concluding that

> *the law requires* that in any case where a prosecutor cites residence as a reason for a juror's inability to decide the matter impartially, to rebut a *prima facie* case of discriminatory peremptory challenges, the prosecutor must give a specific reason why that particular juror has caused the prosecutor to suspect the venireperson's inability to render a fair verdict.

*Id.* at 1035–1036 (emphasis added).  The law requires no such thing.

The Ninth Circuit's interpretation of the plurality opinion in *Hernandez*, cited by the Chief Justice, has been rejected by the United States Court of Appeals for the Third Circuit. *United States v. Uwaezhoke*, 995 F.2d 388, 394, n. 5 (3d Cir.1993).  The court stated

> We can find nothing in the plurality opinion of *Hernandez* that suggests that the prosecutor must offer a nexus between a particular juror and the particular case that tends to demonstrate the juror would be unable to fairly evaluate the evidence;  the opinion merely notes that the facts before it presented the question of how the absence of such a nexus would affect the determination of a *Batson* violation.  We thus disagree with the Ninth Circuit's view that *Hernandez* "strongly suggests" that a nexus between a particular juror

---

**3.**  Interestingly, even Justice Marshall's dissenting statement in *Lynn v. Alabama*, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989) (memorandum), did not conclude that the prosecutor's stated reason (place of residence) was not race neutral.  It focused on the fact that the prosecutor could have determined the existence of actual bias of this type by asking routine questions on voir dire and then stricken such jurors for cause, thus preserving peremptory challenges for other use. Justice Marshall concluded that the prosecutor's failure to do so suggested that this was not the real bias he sought to eliminate, that race was.

and the facts of the case must exist in order for the prosecutor's explanation of a proposed challenge to be facially valid.

I am persuaded that the Third Circuit's analysis in *Uwaezhoke* is more consistent with *Hernandez* and *Batson*, and with the Equal Protection Clause underpinnings of this entire inquiry, than the Ninth Circuit's analysis in *Bishop*. According to this analysis,

> if the government's explanation does not, *on its face*, discriminate on the basis of race, then we must find that the explanation passes Batson muster as a matter of law, and we pass to the third step of Batson analysis to determine whether the race-neutral and facially valid reason was, as a matter of fact, a mere pretext for actual discriminatory intent.

995 F.2d at 392 (emphasis added). I consider this to be an accurate reiteration of the following, taken from the *Hernandez* plurality:

> A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

500 U.S. at ——, 111 S.Ct. at 1866.

The Third Circuit also emphasized that "*Batson*'s holding rests squarely on the Equal Protection Clause," and that "[u]nder that jurisprudence, [the] court may remedy only those acts of discrimination that are intended by the government.... Intention to discriminate is ... an essential element of a *Batson* violation." 995 F.2d at 393. This was followed by reasoning I consider most persuasive.

> This means that an explanation which is otherwise racially neutral on its face is not infirm solely because its repeated application would have a disparate impact on a particular racial group, that is, would result in the exclusion of more members of one racial group than members of other racial

groups. If the government's explanation, generally applied, would have a disparate impact on a particular racial group, this fact should cause a trial judge to exercise special scrutiny during the third step of the *Batson* process to determine whether intentional discrimination, as a matter of fact, underlies the government's peremptory challenge. Indeed, a trial judge may be justified in concluding at that stage that discriminatory intent has played a role in the challenge when the disparate impact is great and any legitimate concern of the prosecutor is slight. But *the role of disparate impact in the Batson analysis is as circumstantial evidence of discriminatory intent at the third stage and not as a controlling legal factor at the second.*

995 F.2d at 393 (emphasis added).

Quite apart from the flawed application of the *Batson* analysis by which he concludes that the prosecutor's explanation was not race neutral, however, I am also troubled by the Chief Justice's conclusion that "residence is too closely tied to race to accept the prosecutor's explanation." Opinion in Support of Affirmance at 1035. On this record, there is no evidence establishing that the 1600 block of Regina Street [4] in Harrisburg is a predominantly black area, or that there is a correlation between areas that are predominantly black and those that are "high-crime". Whatever else I might take exception to in the Ninth Circuit's analysis in *Bishop* and Justice Marshall's analysis in *Lynn*, at the very least it appears that there was some *evidence of record* in those cases from which it could be concluded that the areas of residence referred to by the prosecutors had predominantly black populations.

4. The prosecutor's explanation for his challenge was as follows:
We discussed the fact that he lives in the 1600 block of Regina Street. My impression is that this is a high-crime area, and Detective Lewis's opinion was even greater than mine that it's a high-crime area, and we felt together that a juror from that area would not be a good juror in a burglary and rape case because that kind of thing goes on in that area all the time; and, frankly, we wanted jurors who would be more shocked by this than somebody who lives in that kind of area. Reproduced Record at 14.

Justice O'Connor, concurring in *Hernandez*, joined by Justice Scalia, observed that

a rule that disproportionate effect might be sufficient for an equal protection violation in the use of peremptory strikes runs the serious risk of turning voir dire into a full-blown disparate impact trial, with statistical evidence and expert testimony on the discriminatory effect of any particular nonracial classification. In addition to creating unacceptable delays in the trial process, such a practice would be antithetical to the nature and purpose of the peremptory challenge. Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is "as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose."

500 U.S. at ——, 111 S.Ct. at 1874, quoting *Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892). I fear that the Chief Justice's approach to this case multiplies the risk identified by Justice O'Connor. It invites defendants to equate prosecutors' explanations with innumerable racial stereotypes by asserting a disparate impact, and virtually requires prosecutors to be ready to make an exhaustive record in the case of every peremptory challenge in order to protect against having an appellate court, whom he cannot address directly, find in a lack of detail an opening for misconstruing his motivation.

In *Dinwiddie*, I observed that

[i]t would seem ... that we are headed for much contentious litigation over questions germane not to the guilt or innocence of the accused, but to the fairness, or apparent fairness, of the process by which guilt or innocence is determined. The questions, moreover, would seem to be inherently unanswerable; if the traditional purpose of peremptory challenges is to eliminate "irrational ... suspicions and antagonisms," *Swain v. Alabama*, 380 U.S. 202, 224 [85 S.Ct. 824, 838, 13 L.Ed.2d 759] (1965), how can the courts demand rational explanations for their use?

529 Pa. at 79, 601 A.2d at 1222. I also raised the question whether, in light of this litigation, "the practice of allowing peremptory challenges has become such a burden to the system that it would be better to discard it entirely." *Id.* at 76, 601 A.2d at 1221. I concluded by suggesting that "[i]nstead of pushing our courts into the morass of trying to judge between explanations for the irrational, perhaps the system would be better served by abandoning the use of peremptory challenges altogether, trying cases before the first group of twelve jurors randomly chosen from the venire, and allowing only challenges for cause." *Id.* at 79, 601 A.2d at 1222–23. This case compels me to again sound the call for change.

PAPADAKOS and MONTEMURO, JJ., join this opinion in Support of Reversal.

### OPINION IN SUPPORT OF REVERSAL

PAPADAKOS, Justice.

I join in the opinion authored by Mr. Justice Zappala but write separately to express a thought raised by the Opinion in Support of Affirmance authored by the Chief Justice. The Chief Justice sees a racially based challenge in the fact that the peremptorily challenged African–American juror came from a "high crime area" which he inferentially equates with an African–American community.

I see nothing in the record to establish, or even suggest, that the residential area in which this juror resided was primarily an "African American" area. In my view, a "high crime area" is not synonymous to an "African American area" as accepted in the Opinion in Support of Affirmance.

I also wish to reiterate that, in my view, the time has come to eliminate the peremptory challenges in the criminal courts and restrict challenges to "for cause" only. As Mr. Justice Zappala has stated in his Opinion in Support of Reversal, "the practice of allowing peremptory challenges has become such a burden to the system that it would be better to discard it entirely."