662 A.2d 1076

**COMMONWEALTH of Pennsylvania**

v.

**Joseph RICO, Appellant.**

Superior Court of Pennsylvania.

Argued March 1, 1995.

Filed June 21, 1995.

Reargument Denied Sept. 5, 1995.

---

508

510

Jack M. Myers, Philadelphia, for appellant.

Marilyn F. Murray, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, P.J., and McEWEN and CIRILLO, JJ.

ROWLEY, President Judge.

Robert Hornickle was killed in January, 1983, after he tried to recover $14,000 that he had borrowed from a friend and then given to Ronald DeCaprio and appellant Joseph Rico in an unsuccessful attempt to buy marijuana. In April, 1986, DeCaprio was convicted on federal racketeering charges, with one of the predicate offenses being the murder of Hornickle. In May, 1990, appellant was charged with the murder of Hornickle. On February 21, 1992, a jury convicted appellant of murder in the first degree.

In this timely appeal from the judgment of sentence of life imprisonment, appellant contends that he is entitled to an arrest of judgment as the result of prejudicial pretrial delay that violated his right to due process. Alternatively, appellant asserts that he is entitled to a new trial for the following reasons: 1) the trial court erred in failing to strike the jury panel as the result of the prosecutor's use of peremptory challenges to exclude jurors of Italian descent; 2) prosecutorial misconduct was so pervasive as to deny appellant a fair trial; and 3) the trial court permitted the Commonwealth to introduce inadmissible and prejudicial evidence.[1] After careful review, we conclude that appellant's rights under *Batson v.*

1. Because we conclude that appellant is entitled to a new trial on his *Batson* claim, we need not reach the issue of prosecutorial misconduct. With respect to appellant's multiple claims that the trial court erred in admitting inadmissible or prejudicial evidence at trial, a thorough review of the record and briefs submitted discloses no error. We adopt the reasoning of the trial court, as set forth in its opinion at pages 14–19.

*Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), were violated and he is entitled to a new trial.

We turn first to appellant's claim of prejudicial pretrial delay, for such a claim, if successful, would entitle him to be discharged. *Commonwealth v. Colson,* 507 Pa. 440, 451, 490 A.2d 811, 817 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). In her opinion of July 29, 1994, the trial court has concisely applied the controlling case law to the facts of appellant's case, and we agree, for the reasons set forth at pages 5–8, that appellant's claim is without merit. *See also Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978) (pre-arrest delay of approximately six years and nine months did not violate due process); *Commonwealth v. Grazier,* 391 Pa.Super. 202, 570 A.2d 1054 (1990) (accord).

Appellant contends next that under *Batson* and its progeny, the trial court erred in refusing to strike the jury panel when the prosecutor failed to provide legitimate, race-neutral reasons for exercising peremptory challenges to strike jurors of Italian descent. We agree.

*Batson* requires that a "criminal defendant's jury be selected without purposeful racial discrimination." *Commonwealth v. Smulsky,* 415 Pa.Super. 461, 464, 609 A.2d 843, 844 (1992), *appeal denied,* 532 Pa. 663, 616 A.2d 984 (1992). The defendant has the initial burden to establish a prima facie case of purposeful discrimination, *Commonwealth v. Dinwiddie,* 529 Pa. 66, 601 A.2d 1216 (1992), by demonstrating that the circumstances of his case raise an inference that the prosecutor used his peremptory challenges to exclude venirepersons on the basis of race or ethnicity, *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion per Kennedy, J.); *Commonwealth v. Rush,* 538 Pa. 104, 646 A.2d 557 (1994); *Commonwealth v. Correa,* 423 Pa.Super. 57, 620 A.2d 497 (1993), *appeal denied,* 536 Pa. 638, 639 A.2d 24 (1993).

Once a defendant establishes a prima facie case, the burden shifts to the prosecution to provide a legitimate, race-

neutral reason for each peremptory challenge directed at the suspect racial or ethnic group. *Dinwiddie, supra.* Although the explanation need not rise to the level required for a challenge for cause, *Correa,* 423 Pa.Super. at 65, 620 A.2d at 501, a bald statement that the prosecutor's actions involved "no racial motive," or were undertaken in good faith, is insufficient to meet the burden of production necessary to rebut a prima facie case. *Commonwealth v. Wheeler,* 435 Pa.Super. 266, 271, 645 A.2d 853, 855 (1994), *citing Smulsky,* 415 Pa.Super. at 465, 609 A.2d at 844–45. A trial court's subsequent determination with respect to intentional discrimination is a finding of fact to be given great deference in appellate review, *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313 (1993), and will not be disturbed absent a determination that the trial court's ruling was clearly erroneous, *Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338 (1989) (en banc), *appeal denied,* 525 Pa. 631, 578 A.2d 926 (1990).

■ The Commonwealth argues that appellant failed to establish a prima facie case because Italian–Americans are not a cognizable group warranting protection from discrimination under *Batson.* We disagree. To begin with, in enunciating the now familiar principles of *Batson* (a case concerned with the exclusion of African–Americans from serving on a petit jury), the Court relied upon a previous decision involving systematic exclusion of Mexican–Americans from grand jury selection in Texas to identify the "showing necessary to establish a prima facie case of purposeful discrimination." *Batson,* 476 U.S. at 94, 106 S.Ct. at 1722, *citing Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

■ Subsequent decisions of the United States Supreme Court, the Pennsylvania Supreme Court, and this Court, have increasingly recognized that any analysis of an alleged *Batson* violation should necessarily focus on the discriminatory pattern allegedly employed. To suggest, as the Commonwealth contends, that a *Batson* violation hinges only on whether the excluded group is a "cognizable group" through proof that the

514

group has historically "been or [is] subject to discriminatory treatment," would be a distortion of the law as it has evolved under *Batson*. If any identifiable group is excluded on the basis of race, gender, ethnicity, or other reason not related to a perception that the individual member would be unable to adequately perform the functions and duties required of a juror in the case presented, impermissible discrimination has occurred. *See, e.g., J.E.B. v. Alabama ex rel. T.B.,* —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (equal protection clause forbids exercise of peremptory challenges on basis of gender); *Hernandez, supra* (*Batson* violation would occur if prosecution exercised peremptory challenges to exclude "Latinos by reason of their ethnicity"; no clear error found in trial court's determination that charge of purposeful discrimination was rebutted); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (white defendant has equal right to object to exclusion of black veniremen through use of peremptory challenge); *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (equal protection rights of challenged juror violated if challenge based on race); *Commonwealth v. Horne,* 535 Pa. 406, 635 A.2d 1033 (1994) (prosecutor's reason for exclusion, that prospective juror lived in "high crime" area and was therefore desensitized to crime, was not race-neutral as applied to individual juror excluded) (Nix, C.J., Opinion in Support of Affirmance); *Correa, supra* (*Powers* decision eliminated two requirements of prima facie showing previously required of defendant under *Batson:* defendant no longer need establish that he or she is a member of a cognizable racial group, nor a member of the same group as that excluded through use of peremptory challenges).

 We believe that the evolution of the law under *Batson* and its progeny consistently demonstrates that three distinct interests are implicated. First, a litigant has the right to a jury selection process free of discrimination. Second, a prospective juror has a right to participate in this essential civic duty with confidence that he or she was evaluated by virtue of ability to serve, regardless of race or ethnic heritage,

and "free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice." *J.E.B.*, —— U.S. at ——, 114 S.Ct. at 1421, 128 L.Ed.2d at 97. Lastly, the community has the right to an unquestioned belief that our system of justice operates without discrimination at every level. *Dinwiddie*, 529 Pa. at 75, 601 A.2d at 1220–21. Only if all three "multiple ends" identified by the Supreme Court are served is equal protection afforded to all. *Powers*, 499 U.S. at 406, 111 S.Ct. at 1368; *Dinwiddie, supra.*

Voir dire of prospective venirepersons for appellant's trial consumed four days. Prior to swearing the first panel of prospective jurors, the trial court and counsel agreed to the questions the court would direct members of the panel to answer. They included inquiries with respect to a juror's age, occupation, place and length of residence, as well as a specific question, composed by the trial court, regarding a prospective juror's ability to be fair and impartial in light of "evidence in this case that might tend to connect the defendant and/or one or more of the witnesses with organized crime." According to the trial court, the question was designed to benefit the prosecution as well as the defense, since it would elicit "whether they would have a prejudice."

Of the twenty peremptory challenges available to, and used by the prosecutor, appellant points to seven exercised to exclude individuals of apparent Italian descent from those ultimately selected to serve on the jury at appellant's trial.[2] Appellant raised his first *Batson* objection when the prosecutor exercised two consecutive peremptory challenges the first day to exclude Cathy R. and Enrico S.[3] When a third venireperson of apparent Italian descent, Linda G., was per-

---

[2] One of the venirepersons allegedly subjected to the prosecutor's discriminatory exclusion, Jane C., was in fact challenged by the defense. However, appellant also failed to include in his list a peremptory challenge exercised by the prosecutor to exclude venireperson Linda G. Appellant's counsel made a *Batson* objection to this challenge on the record.

[3] Although a matter of public record, the nature and content of several side-bar discussions held in this case lead us to conclude that the privacy interests of the venirepersons involved are best served by using initials rather than full last names.

emptorily excluded by the prosecutor, appellant's counsel again objected, noting the prospective juror's Italian surname. After discussion, the trial court informed the prosecutor, "I will give you notice to start noting down your reasons in case I require you."

The following day, after the prosecutor exercised three more peremptory challenges to exclude venirepersons with Italian-sounding surnames, Mary T., Vincent G., and Susan B., the trial court acknowledged that a prima facie case of discriminatory intent had been made out in the following exchange:

> THE COURT: [ ] We have had very few people of Italian descent on the jury panel. I notice two or three on each one of these panels. The same is true of this panel, very few and[,] except for Mr. DeAngelis who was accepted by the Commonwealth[,] all the others have been peremptory challenged by the Commonwealth.

> MR. CAMPOLONGO: So what? Your Honor is saying I am not permitted to exercise?

> THE COURT: That's the entire point of [*Batson*], Mr. Campolongo, that the court can disallow a challenge if the court believes that the challenges are being used to purposely exclude one particular group and *it would appear to me from the record that the record shows a purposeful exclusion o[r] pattern of exclusion on the part of [the] Commonwealth on anybody who appears to be of Italian descent.*

The prosecutor exercised a seventh peremptory challenge to exclude a venireperson of conceded Italian descent, John T., from a panel drawn to select alternate jurors on the fourth day.

■ We find that the record supports the trial court's determination that an inferential pattern of discriminatory intent was sufficiently established to properly shift the burden to the prosecutor to place on the record his reasons for exercising peremptory challenges against venirepersons of

apparent Italian descent.[4] Accordingly, once a prima facie case was made out and the prosecutor required to provide legitimate, ethnically neutral explanations, it is axiomatic that any justification so offered may not be based upon the individual's ethnicity. *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d at 405 (a neutral explanation means one based on something other than the race of the juror).

We turn, then, to a review of the record to determine if the prosecutor provided legitimate, ethnically neutral reasons for the exercise of its peremptory challenges against venirepersons of Italian descent.

We do not have the benefit of the prosecutor's reasons for striking the first three jurors of apparent Italian descent, as the trial court, despite its ruling, failed to require the prosecutor to place his reasons on the record.[5]

The record establishes an ethnically neutral reason for the prosecutor's fourth peremptory challenge exercised against an individual of apparent Italian descent, Mary T. After conceding that Ms. T. was Italian, the prosecutor stated that he struck her for insufficient "intellect[ual] wherewithal to comprehend the facts of the case." The record confirms that the prospective juror struggled to comprehend the trial court's use of the word "impartial" and admitted to being "a little nervous." Doubt with respect to a juror's ability to

4. In its opinion, the trial court conducts a *post hoc* evaluation of the record and concludes at page 13 that appellant failed "to establish a prima facie case of a *Batson* violation." However, the appropriate time for a determination with respect to whether a prima facie case is established, as occurred here, is during voir dire when the defendant objects to the prosecutor's challenges.

5. We note that appellee contends on appeal that despite the fact that reasons for striking the first venireperson, Cathy R., are not apparent on the face of the record, she was "apparently struck because of her youth, since all of the jurors selected were older." We reject this attempt at speculative, *post hoc* justification de hors the record. *See* note 9, *infra*.

comprehend the court's directions is a legitimate, race-neutral explanation. *Wheeler, supra.*

Similarly, the prosecutor's peremptory challenge exercised on the last day of voir dire to exclude John T. as an alternate juror, although a closer case, was explained by his perception during the court's voir dire that John T. was "a very, very strange person," and "probably an extremely[,] very unusual person, probably gay," [6] and "not because he's Italian. That's really true." [7]

However, we need look no further than the explanation provided by the prosecutor when a fifth peremptory challenge was exercised to exclude venireperson Vincent G. to find a reason that, under any analysis, is not ethnically neutral:

> MR. MYERS: I would ask your Honor that counsel state his reasons why he has used a peremptory challenge.
>
> THE COURT: One moment. Mr. Campolongo?
>
> MR. CAMPOLONGO: Yes, I didn't like the way he reacted to the question about his ears turned red, he turned red the question asked about organized crime and he said I guess so, something like that. I didn't like, I detected what I thought was fear in his demeanor and his voice when organized crime was mentioned and *that in conjunction with his Italian background* led me to believe he would not be a juror suitable with this case.

While the trial court denied defense counsel's immediate objection and motion to dismiss the panel, we note that, unlike the other peremptory challenges at issue in this case, the trial court makes no attempt to provide an ethnically neutral justification in hindsight for the prosecutor's reasons for striking this juror.

Our resolution of this case could well end with the conclusion that the prosecutor's reason for striking prospective juror Vincent G. was impermissibly discriminatory. However, in

---

6. Because the issue in this case concerns the ethnicity of prospective jurors, we quote the prosecutor's explanation for excluding this particular juror only for the purpose of demonstrating that it did not apparently involve his ethnicity.

7. Defense counsel immediately moved to strike the panel. The trial court denied the motion without discussion, and appellant proceeded to trial.

light of the persuasive reasoning set forth in the Pennsylvania Supreme Court's decision in *Horne, supra,* we are also troubled by the prosecutor's exclusion of the next prospective juror of Italian descent, Susan B. When asked whether evidence that the defendant or one or more witnesses was linked to organized crime would affect her ability to be fair and impartial, she responded:

> THE VENIREMAN: I don't think that would bother me at all. I know I live in South Philadelphia and they consider that the mob area[,] but I don't know anybody in organized crime so I don't think it would effect [sic] me at all.
>
> THE COURT: Do you have any doubt about that?
>
> THE VENIREMAN: No.

The prosecutor offered the following justification for striking Susan B.:

> THE COURT: Would you please place on the record your reason for peremptory of this juror who obviously is of Italian descent?
>
> MR. CAMPOLONGO: I'll agree she's Italian. Appears to be Italian.
>
> THE COURT: She said of Italian descent. Do you want me to ask her what her maiden name is?
>
> MR. CAMPOLONGO: I'll agree. I don't think it's necessary. I'm striking her *because she lives in South Philadelphia in an area over which the mob will speak and I think she's subject to intimidation[.]* [I]n an abundance of caution I'm striking her.
>
> THE COURT: I'm disallowing that challenge. There's absolutely no indication at all of any of that on the part of this juror. She said she doesn't know anybody and this wouldn't have any effect on her and I don't think this is reason for your challenge.

Despite its rejection of the prosecutor's explanation, the trial court excused Susan B. after the prosecutor complained that exercising a peremptory strike in the juror's presence would prejudice the prosecution at trial.

This attempt to justify striking Susan B. is especially egregious in light of the fact that the prosecutor went on to accept two jurors who resided in South Philadelphia, for thirty-five and twenty-three years respectively, but who were not of apparent Italian descent. Appellee argues that the prosecutor excluded Susan B. after making a determination that she lived in a specific "part of South Philadelphia subject to Mob or La Cosa Nostra influence." Even were we to assume that a threat of insidious "mob" intimidation was real, the prosecutor failed to offer *any* reason why this particular prospective juror was more susceptible to intimidation than the jurors who were accepted. Absent evidence that a challenged venireperson "actually entertained the bias underlying the use of that factor," place of residence is not necessarily a race-neutral explanation.[8] *Horne,* 535 Pa. at 409, 635 A.2d at 1034, *citing Lynn v. Alabama,* 493 U.S. 945, 947–48, 110 S.Ct. 351, 352, 107 L.Ed.2d 338, 340 (1989) (Marshall, J., dissenting from denial of certiorari); *but cf. Jackson,* 386 Pa.Super. at 59, 562 A.2d at 353 (trial court did not err in accepting as neutral a prosecutor's striking four prospective jurors who "had a familiarity with the location where this incident was alleged to have taken place," while accepting three others, as part of over all strategy). The trial court was correct to reject the prosecutor's explanation when it was offered.[9]

**8.** In *Commonwealth v. Horne,* 535 Pa. 406, 635 A.2d 1033 (1994), three justices of our Supreme Court concluded that once a prima facie case of discriminatory intent is established, the prosecutor must either advance a totally neutral reason for his peremptory challenges, or, if an exclusion would have a racially disparate effect, demonstrate how that particular juror entertains the alleged bias. *Id.,* 535 Pa. at 411 n. 1, 635 A.2d at 1035 n. 1.

**9.** It would be the height of inconsistency to accord "substantial deference" to a trial court's factual findings when they happen, *post hoc,* to concur with the Commonwealth's position, while ignoring factual findings made at the more relevant time, during voir dire. The fact is, the trial court disallowed the prosecutor's justification for excluding Susan B. at the time the peremptory challenge was exercised. We fail to see how an explanation unequivocally rejected at the time offered, becomes ethnically neutral in hindsight, or "after careful review." Absent evidence of clear error, and consistent with the appropriate standard of review, we defer to the trial court's determination at the time it was made.

Thus, we cannot agree with the trial court's conclusion, made in hindsight and after "careful review," that the Commonwealth "articulated [a]n ethnically neutral basis" for each challenge to which a timely objection was made. The record with respect to the prosecutor's explanation for peremptorily excluding Vincent G., on its face, belies this contention. The fact that Susan B., a venireperson of Italian descent, lived in South Philadelphia, without more, says nothing about why she was more vulnerable to intimidation than others who were not of Italian descent.

Nor can we agree that any harm inherent in the prosecutor's pattern of discriminatory exclusion is ameliorated by the fact that "the jury panel did include a juror of Italian descent and one alternate juror with an Italian surname." Advancing an argument that members of an excluded group eventually found their way onto a jury panel is, at best, a relevant factor for a trial court to consider when faced with making a determination with respect to whether a prima facie case is made out. *Jackson*, 386 Pa.Super. at 47, 562 A.2d at 346–47. It is not sufficient to overcome the inference of discriminatory intent, once a prima facie case is established. The "improper exclusion of a single juror based upon race is sufficient to 'taint' the proceedings, and the number ... that remains to serve is irrelevant for purposes of legitimizing the selection process." *Dinwiddie*, 529 Pa. at 72 n. 10, 601 A.2d at 1219 n. 10, *citing Powers*, 499 U.S. at 411–12, 111 S.Ct. at 1371, 113 L.Ed.2d at 426.

We are not unaware that the conclusion we reach in this case will be perceived to be an additional restriction on the right to exercise peremptory challenges, a practice only recently subject to judicial oversight. A peremptory challenge, properly used, is an extremely useful tool for a trial advocate who wishes to exclude a venireperson for reasons which the advocate sincerely, and perhaps inarticulately, believes will best serve the interests of his or her client. On the other hand, the right to exercise peremptory challenges, although deeply rooted in our history, is not a "constitutionally protected fundamental right; rather [it is] a state-created means to

522

the constitutional end of an impartial jury and a fair trial." *J.E.B.*, —— U.S. at —— n. 7, 114 S.Ct. at 1426 n. 7, 128 L.Ed.2d at 102 n. 7, *quoting Georgia v. McCollum*, 505 U.S. 42, 57, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33, 50 (1992).

Our decision should not be viewed as a lowering of the standard of substantial deference to be afforded a trial court's determination of whether purposeful discrimination exists.[10] To the contrary, the primary responsibility for this essential finding of fact must remain with the trial judge, who is most able to pass on the credibility of the litigants, along with the race-neutrality of the litigants' explanations for exercising peremptory challenges to exclude a suspect group, once a prima facie case of discriminatory intent is made out. It is the trial court's responsibility to provide proper guidance to litigants with respect to the showing necessary for a prima facie case of discriminatory intent. Once a prima facie case is made out and the burden of production has shifted, it is the trial court's responsibility to require correspondingly thorough and legitimate responses from the prosecution. In light of the explanations offered, and under the totality of the circumstances, it is then the trial court's ultimate responsibility to determine whether a defendant may prevail in carrying his burden of proving that discriminatory intent is, in fact, purposeful discrimination. If these steps are followed, appellate review of alleged *Batson* violations will become less frequent and less painstakingly detailed. *See Jackson*, 386 Pa.Super. at 51–52, 562 A.2d at 349.

10. The United States Supreme Court, in a per curiam opinion, recently addressed the burden of proof required of a party alleging a *Batson* violation in *Purkett v. Elem*, —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Our resolution in the instant case is consistent with the Court's determination that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*, —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at ——. In appellant's case, the prosecutor failed, after a prima facie case was made out, to satisfy the burden of production "of articulating a nondiscriminatory reason for the strike." *Id.* The prosecutor, having advanced an explanation that was obviously not ethnically neutral, relieved the trial court of any need to proceed to step three, where an evaluation of facially neutral explanations for hidden pretext occurs.

In this case, we concur with the trial court's conclusion that a prima face case of discriminatory intent to exclude venirepersons of Italian descent existed. Once the trial court made this determination, we concur that it was proper to require the prosecutor to make a record of his reasons for exercising peremptory challenges against individuals of Italian descent.

The burden having shifted to the prosecutor to rebut the inference of intentional discrimination, he was then required to provide ethnically neutral reasons for *each* peremptory exclusion of a juror that was of apparent, or conceded, Italian descent.[11] The failure of the prosecutor to advance an ethnically neutral reason for striking prospective juror Vincent G. is alone sufficient to find he failed to carry his burden of production, "and the resulting verdict was thereby 'tainted.'" *Dinwiddie*, 529 Pa. at 72, 601 A.2d at 1219. When the prosecutor blatantly admitted that the ethnicity of this juror was a reason for his exclusion, it was clear error to permit the juror's exclusion, or, in the alternative, not to grant defense's motion to strike the panel.

To summarize, of the seven peremptory challenges exercised against venirepersons of apparent or conceded Italian descent, the record contains no explanation for three, and as to one, the proposed juror's ethnic background was clearly stated as a reason for exclusion by the prosecutor. When the next juror of Italian descent was excluded for a facially neutral reason, i.e., her place of residence, while two proposed jurors who resided in the same area, but were not of Italian descent, were accepted, at the very least, the trial court erred in not conducting a "step-three" analysis to determine if the reason for the exclusion was, in fact, pretextual. This practice offended appellant's right to a jury selection process free of discrimination, as well as the rights of the individuals, called upon to serve their community without regard to their ethnic heritage, who were excluded.

11. Just as our review is hampered by the trial court's failure to require the prosecutor to proffer legitimate, ethnically neutral reasons for striking the first three venirepersons of apparent Italian descent, so is any argument appellee might advance to rebut the presumption of purposeful discrimination.

Judgment of sentence vacated. Case remanded for a new trial.

Jurisdiction relinquished.